Hay *v*. ALEXANDRIA & W. R Co. and others.

(*Circuit Court E. D. Virginia.* 1884.)

1. DECISION OF STATE COURT—TRUST DEED—DEFECTIVE REGISTRATION.

A railroad corporation executes a trust deed, giving preference to one of its directors over other creditors, and this deed is acknowledged before, and certified by, that director for registration, as a notary public. The court of highest resort of the state in which this deed is recorded pronounced that it does not create a lien upon the property conveyed, because of its defective registration. The validity of this registration is afterwards assailed in a federal court, which *held* that it would not reopen the question of registration and would treat the registration as null.

2. SAME—MUNICIPAL BONDS—RIGHTS OF CREDITORS OF RAILROAD CORPORATION.
    The charter of a city prohibits its councils from increasing its public debt
    unless authorized by two-thirds of its qualified voters.   A deed is executed by
    a railroad corporation securing bonds proposed to be issued, and the city guar-
    antees to the bondholders the payment of the bonds, without being authorized
    by a two-thirds vote, and afterwards, when the bonds mature, pays the bonds
    and becomes the holder of them.   In a subsequent litigation between the city
    and other lien creditors of the railroad corporation, the court of highest resort
    of the state in which the railroad lies and in which the railroad company is
    chartered, decrees that the deed is a lien upon the railroad notwithstanding the
    aforesaid inhibition in the city charter.   In a still later litigation between lien
    creditors of the railroad corporation in a federal court, that court *held* that the
    decision of the state appellate court on this point was one that it was proper
    to follow, and, moreover, that although the city might have contested her lia-
    bility to pay the bonds, yet that subsequent lienholders were in no condition
    to make such a contest, the debt being due, the lien being valid, and it being
    immaterial to them who gets the amount due.
3. SAME—JURISDICTION—ASSIGNMENT OF JUDGMENTS IN STATE COURT—CITIZEN-
    SHIP OF PARTIES—SATISFACTION OF JUDGMENTS.
    Four state court judgments against a railroad corporation are assigned to
    Hay, a non-resident of the state.   The plaintiffs in two of them are non-resi-
    dents, and those in the two others are residents.   These four judgments, after
    being assigned to Hay, are by him marked *satisfied*, for a consideration which
    turns out to be null and void. , An equity suit is brought by Hay in the federal
    court of that state to set aside the *satisfactions* and restore the liens of the orig-
    inal judgments and decree was entered according to the prayer of the bill.   In
    a subsequent creditors' suit to settle liens and priorities, it was contended that
    this decree was defective for want of jurisdiction in the federal court to enter-
    tain the suit as to the two judgments that had been recovered by residents, the
    second clause of section first of the judiciary act of 1875 denying jurisdiction
    of the suit of an assignee of a chose in action, where the assignor could not
    sue, *held,* that the *satisfactions* were marked on the judgments by Hay, on an
    implied undertaking of the railroad company to make the judgments good if
    the consideration of marking them satisfied was null and void; that this obli-
    gation was to Hay himself and was the real cause of action in the equity suit,
    and therefore that the second clause of the act of 1875 did not apply.   More-
    over, that in any event the controversies represented by the two judgments be-
    tween citizens of different states gave jurisdiction of the *suit* in equity which
    comprehended the four judgments, and the federal court had a right to decree
    as to all four judgments, unless it had been shown that the judgments had been
    assigned for the purpose of creating jurisdiction as prohibited by section 5 of
    the act of 1875.
4. SAME—STATE STATUTE KEEPING JUDGMENTS ALIVE—MERGER.
    The statute law of Virginia provides that judgments may be kept alive in
    the following manner:   Execution may be issued within a year and *scire facias*
    or action may be brought within 10 years; and where execution issues within
    the year, other execution may issue, or *scire facias* or action be brought within
    10 years from the return-day where there is no return, or within 20 years from
    the return of an execution where there is a return.   Accordingly, on judgments
    obtained in 1860, on which execution had been issued and returned within a
    year, actions were brought in 1875 and new judgments obtained, and it was con-
    tended that the old judgments were merged in the new; that the liens of the
    old were lost, and that the liens of the new dated only from the dates of the
    new judgments, and took priority only as of the later dates.   But the court
    *held* that whatever may be the law as to merger in other jurisdictions, yet if
    the methods prescribed by the statute law of a state for preserving judgments
    and their liens are pursued, the doctrines of merger must not be applied in that
    state in such manner as to defeat the purpose of the law and to destroy priori-
    ties expressly intended to be preserved.

In Equity.

The Alexandria & Washington Railroad Company extends from
Alexandria to the south end of Long bridge, opposite Washington

city, on the Potomac river. It is less than four miles long, but it is the important link which connects all railroads north with all railroads south of the Potomac river, which lie east of the Blue ridge mountains. The width of ground originally condemned for its construction was 50 feet. Its original track was laid on the east side of this strip of land. It lies wholly in the county of Alexandria, Virginia. The company owning it was chartered on February 27, 1854. Acts Assembly Va. 1853–54, c. 63, p. 41. Its financial condition has always been exceptionally feeble, and its affairs and transactions have been the subject of varied and continued litigation in all courts in which they were cognizable. On the nineteenth of April, 1855, this company, having determined to issue bonds for raising money with which to build and equip its road; and the city of Washington having agreed to guarantee the payment of a portion of the bonds, the company executed a trust deed conveying its franchises, road, and property to J. H. and A. T. Bradley as trustees, for the purpose of securing the city in its guarantee. Owing to some imperfection in this deed a second one ratifying and confirming it was executed on the tenth of July, 1857, and recorded in the Alexandria county court on the twenty-third of July, 1857. The guarantee of the city of Washington was given by authority of an act of its board of aldermen and board of common council passed February 8, 1855, expressly conferring it. It is averred in the briefs of counsel that this act of the Washington councils was *ultra vires*, inasmuch as the charter of the city then in force, (that of May 17, 1848,) in its tenth section contains the following conditional provision:

"The corporation shall not have power to increase the present funded debt of the corporation either by borrowing money or otherwise, unless it shall be agreed to do so by two-thirds of the legal voters of the said city at an annual election."

No such vote was ever taken. Some years after this guarantee was given, when the bonds matured for payment, the corporation of Washington paid them, principal and interest, and now holds them, having cancelled and cut out its own signature to the bonds.

On the thirty-first of December, 1856, the Alexandria & Washington Railroad Company executed to I. L. Kinzer, as trustee, a trust deed conveying all its works and property to secure a bond of some $15,000 to the holders thereof who were the firm in Alexandria of Fowle, Snowden & Co. This deed was recorded on the third of April, 1857, nearly four months in advance of the Bradley deed. It was acknowleged before and certified by William H. Fowle, as notary public, who was one of the directors of the company and a member of the firm of Fowle, Snowden & Co. Walter Lennox, hereafter to be mentioned, was also a director of the company and was present at the execution of the Kinzer deed. Both Fowle & Lennox, as well as Snowden, of the firm of Fowle, Snowden & Co., had been directors of the company at, and cognizant of, the execution of the previous

deed of the company to the Bradleys for the benefit of the city of Washington. On the sixteenth of July, 1857, the company executed to Walter Lennox, as trustee, a deed conveying its railroad, franchises, property, rights, and privileges in trust to secure thirty bonds of a thousand dollars each, with interest, to their holders. This deed was duly recorded on the twenty-fourth of July, 1857. None of the foregoing deeds conveyed the income of the Alexandria & Washington Company from its road. A provision of the statute law of Virginia respecting deeds, is as follows:

"Every deed of trust conveying real estate shall be void as to creditors (with or without notice,) and subsequent purchasers for valuable consideration without notice, until and except from the time it is duly admitted to record in the county or corporation wherein the property embraced in such contract may lie." Code 1873, c. 114, § 5, p. 89.

At several dates, about the period of the execution of these deeds, judgments were recorded in the circuit court of Alexandria county, (one judgment in the county court of that county,) against the Alexandria & Washington Railroad Company, viz: One on the twenty-fifth of November, 1857, for $6,706.70; two on the twenty-seventh of May, 1859, for $437.17 and $2,410.87, the term of the court rendering these having commenced on the sixteenth of May, 1859; one on the ninth of February, 1858, for $1,243.64; one on the twenty-first of March, 1860, for $1,000; one on the twenty-first of February, 1860, for $16,606.87; and a seventh on the twenty-first of February, 1860, for $2,260.04,—all with interest and costs. The two first named of these judgments were obtained by non-residents of Virginia, and the second and third of them, by residents of Virginia. These four first-named judgments were assigned as judgments, by the judgment creditors, to Alexander Hay, the complainant in this suit. In the three cases last named, the causes of action had been assigned to Hay before suit, and judgments had been obtained on them by Hay as assignee. Executions were taken out promptly on the first five of these judgments, and returns duly made on them. The other two were docketed, and so were some of the first five judgments. The first four of these judgments were marked "satisfied" on the thirtieth of November, 1865, under written authority from Hay, dated November 23, 1859.

The statute law of Virginia provides, in respect to judgments, substantially, that,—

Sec. 6. "Every judgment for money rendered in this state against any person shall be a lien on all the real estate of such person as of the date of such judgment; or, if rendered in court, as of the day of the commencement of the term at which it was rendered."

Except—

Sec. 8. That "it shall not be a lien on real estate as against a purchaser for valuable consideration without notice, unless it be docketed on the judgment docket of the county court of the county where the land lies, either within sixty days next after the date of such judgment, or fifteen days before

the conveyance of said estate to such purchaser." Code Va. 1873, *c.* 182, §§ 6, 8, p. 1166.

As this law stood in the period 1855 to 1860, the time mentioned in the last lines quoted was, "within *a'year* next after the date of such judgment, or *ninety days* before the conveyance," etc.

Section 9 of the same chapter provides:

"The lien of a judgment may always be enforced in a court of equity. If it appear to such court that the rents and profits of the real estate subject to the lien will not satisfy the judgment in five years, the court may decree the said estate, or any part thereof, to be sold," etc.

Section 12 provides that—

"On a judgment, execution may be issued within a year, and a *scire facias* or action may be brought within ten years after the date of the judgment; and where execution issues within the year, other execution may be issued, or a *scire facias* or action may be brought within ten years from the return-day of an execution on which there is no return of an officer, or within twenty years from the return of an execution on which there is such return; provided, that in computing time under this section, there shall, as to writs of *scire facias*, be omitted from such computation, the time elapsed between the first day of January, 1869, and the passage of this act; [viz: March 28, 1871.]

In 1875 Alexander Hay brought a suit in this, the United States circuit court for the Eastern district of Virginia, at Alexandria, on the equity side, setting out that the consideration had failed, for which he marked as satisfied, the four first-named of his judgments that have heretofore been described; and praying that the "satisfactions" on them should be set aside, and the judgments reinstated with all liens attaining to them at the date of the satisfactions. This suit went on until January, 1881, when a decree was rendered in conformity with the prayer of the bill, from which no appeal has ever been taken. In the same year Hay brought a suit on the common-law side of this court, against the Alexandria & Washington Company, based on the three last-named judgments in his favor which have heretofore been described, and recovered a verdict and judgment anew on the three old judgments.

On the third of February, 1864, the general assembly of Virginia (that which sat at Alexandria) incorporated the Alexandria & Fredericksburg Railway Company, with authority to construct a railroad from Alexandria to the vicinity of Fredericksburg. Acts, 1863–64, *c.* 17, p. 20. That charter lapsed, but was revived by the general assembly on the fourth of June, 1870, by an act which empowered the company to extend its road to a point on the Potomac river between Alexandria and Washington city, or opposite Washington city, to connect with the bridge of any railroad company chartered by congress, whose road passes, or shall pass, through the District of Columbia. Acts, 1869–70, *c.* 145, p. 188. This act contained this proviso: "That, in the extension of said railway it shall in no way interfere with the chartered rights or franchises of any railroad extending between Alexandria and Washington," etc. This act virtually

gave authority to the Alexandria & Fredericksburg Company to run a road parallel with that of the Alexandria & Washington Company between Alexandria and the south end of the Long bridge. The Alexandria & Fredericksburg Company soon acquired the property of the Alexandria & Washington Turnpike Company, whose turnpike road runs alongside of the Alexandria & Washington Railroad, its whole length. Instead of determining' to lay its track wholly on the turnpike road, the Alexandria & Fredericksburg Company instituted proceedings, on the sixth of February, 1871, in the county court of Alexandria county, for condemning to its use a strip of land 18½ feet in width, taken from the west side of the 50-feet strip of the Alexandria & Washington Railroad. Under these proceedings, which were vigorously opposed by certain private persons and by James S. French, a stockholder in, and the former president of, the Alexandria & Washington Railroad Company, this 18½-feet strip of land was finally assessed by commissioners at the value of $407.81, the report of which was confirmed by the court by an order of June 2, 1873, and the amount assessed was paid into court by the Alexandria & Fredericksburg Company. These proceedings do not seem to have been resisted by the officers of the Alexandria & Washington Railroad Company, but were nevertheless strenuously resisted, and delayed for more than two years, as before stated.

The statute law of Virginia provides that upon such judgment as that just described, confirming an assessment, the title to that part of the land for which such compensation is allowed, shall be absolutely vested in the company in fee-simple. Code 1873, c. 56, § 11, p. 538. The Alexandria & Fredericksburg Company at once took possession of the strip of land referred to, and in due course of time laid down a steel rail track upon it at an original cost of $59,610.37. It may be added here, that, after a considerable flood in the Potomac in the winter of 1881, repairs were put by this company on the whole 50-feet strip of land, including the tracks of both companies, at an outlay of $11,912.89, and that it has also, since 1870, paid taxes upon this property of the two companies to the amount of $1,384.57.

The proceedings of condemnation which have been mentioned were made the subject of an appeal to the circuit court of Alexandria county, which terminated on May 23, 1879, in a decree declaring the proceedings illegal, and, of course, invalidating the title of the Alexandria & Fredericksburg Company to the 18½-feet strip of land on which it had constructed its road. The ground of this decree of the circuit court was that the condemnation had been in violation of the proviso in the amended charter of the Alexandria & Fredericksburg Company, which has been quoted, prohibiting the Alexandria & Fredericksburg Company from interfering with the chartered rights and franchises of the Alexandria & Washington Railroad Company. A majority of the capital stock of the Alexandria & Washington Company was acquired by the Pennsylvania Railroad Company on the

twenty-third of April, 1872.    That company held a controlling inter-est in the Alexandria & Fredericksburg Company from the time it was organized.    It also has held a controlling interest in the Balti-more & Potomac Company, whose road extends from Baltimore to Washington, and through Washington to the southern end of the railroad bridge crossing the Potomac at Washington.    The decree of the circuit court of Alexandria county invalidating the proceedings in the county court for the condemnation of the 18½-feet strip of land which has been mentioned, was itself made the subject of an appeal to the supreme court of appeals of Virginia, which latter court, on the twenty-fourth of November, 1881, affirmed the decree of the circuit court, and finally invalidated the title of the Alexandria & Freder-icksburg Company to the strip of 18½ feet of land in controversy; the Alexandria & Fredericksburg Company having held this strip of land for about nine years under color of title, and put improvements on it, as has been stated, to the value of upwards of $70,000.    The statute law of Virginia provides on this subject, substantially, that, where a jury shall be satisfied that a defendant against whom a decree or judgment shall be rendered for land, made on the premises at a time when there was reason to believe the title good under which he was holding permanent and valuable improvements, they shall estimate in his favor the value of such improvements as were so made before notice in writing of the title under which the plaintiff claims, not ex-ceeding the amount to which the value of the premises is actually increased thereby at the time of the assessment.    Code 1873, *c.* 432, §§ 1, 4, p. 964.    Other sections provide that rents for five years are to be credited to the plaintiff, and for other adjustments.

It is not shown that either the Bradleys, or Lennox, or Kinzer, or any of the beneficiaries of the deeds which they represent took any part in resisting the condemnation of the strip of land which was taken and improved by the Alexandria & Fredericksburg Company, or ever gave "notice in writing" to that company of the liens which they held on the Alexandria & Washington Railroad, or made objection, or gave warning in any way against the construction of improvements upon the property which was subject to their liens.    It is physically cer-tain, from the conspicuous site of the road in relation to the residences of the trustees and a large portion of the beneficiaries in the deeds, that they must have had actual personal notice of these improvements during all the stages of their progress.    In November, 1857, Kinzer, the trustee heretofore mentioned, advertised the property of the Alex-andria & Washington Railroad Company for sale in accordance with the terms of his deed; and, on the thirtieth of that month, the com-pany presented a bill to the judge of the circuit court of Alexandria county, praying for an injunction against such sale, attacking the validity of the debt named in the deed, and averring that it was sub-sequent in dignity to the Bradley deed securing the city of Washing-ton.    The Bradleys and city were made parties defendant, and so

were Lennox and James S. French, the president, individually, made defendants. On the third of April, the city of Washington filed a cross-bill in the same suit asking affirmative relief. On the twenty-fifth of May, 1859, the circuit court of Alexandria county made a decree in the suit thus described, containing, among others, the following clauses:

"The court doth adjudge, order, and decree that the certificate of acknowledgment to the deed of trust from the Alexandria & Washington Railroad Company to I. Louis Kinzer, dated on the thirty-first of December, 1856, and filed in this cause, not being in conformity with the statute of Virginia in such case made and provided, the said deed was illegally admitted to record, and that the said deed from the Alexander & Washington Railroad Company to Joseph H. and Thomas A. Bradley, dated on the tenth day of July, 1857, and recorded on the twenty-third day of July, 1857, having been recorded according to law, created a lion in favor of said city of Washington upon the property and works of the said Alexandria & Washington Company, paramount to the lien created by the said deed of trust to the said I. Louis Kinzer, etc. And the court doth further adjudge, order, and decree that the said Fowle, Snowden & Co. recover against the said Alexandria & Washington Company the sum of $16,481.35, with interest, costs," etc.

The first day of the term, at which this decree was rendered, was the sixteenth of May, 1859. From this decree appeal was taken by Fowle, Snowden & Co., to the supreme court of Appeals of Virginia, in the petition for which there were assigned, among others, as grounds of error: (1) that the Kinzer deed *was* properly admitted to record; (2) that the Bradley deeds were invalid, because there was no express provision of law authorizing Washington city to guarantee the Alexandria & Washington Company's bonds; (3) and that if the Kinzer deed had been improperly admitted to record yet it "was valid and created a lien, although it might be subordinate to other liens," and yet the court "nowhere affixed to this lien its rank in the order of priorities." It does not appear that execution was ever taken out on this decree in favor of Fowle, Snowden & Co., rendered on the twenty-fifth of May, 1859.

The following are the amounts of the debts reported:

Debt under the Bradley deed to the city of Washington,      -   $154,340
Debt under the Lennox deed to English creditors,        -       102,092
Debt due on the Hay judgments,        -        -        -    -    79,405
Debt due the Fowle, Snowden & Co.,    -    -    -    -    -       22,785
Claim of the Alexandria & Fredericksburg Railroad Company
    of $110,451, allowed by the court at -    -    -    -    -    59,610

A creditor's bill was brought in this court to ascertain the debts of the Alexandria & Washington Company, and to settle the order and priorities of liens. The case was heard by Chief Justice WAITE and Judge HUGHES on the fourth and fifth of February, and is now decided as indicated by the following opinion delivered by Judge HUGHES:

*Eppa Hunton* and *Francis Miller*, for the city of Washington.

*John Selden, C. W. Wattles,* and *Leonard Marbury,* for Lennox creditors.

*Francis L. Smith* and *Wayne McVeigh,* for the Alexandria & Fredericksburg Company.

*O. A. Cloughton,* for Fowle, Snowden & Co.

HUGHES, J.   The task of the court is to pass upon the relative priorities of the several deeds and judgments resting as liens upon the property of the Alexandria & Washington Railroad Company, and ascertain the rights with reference to these liens of the Alexandria & Fredericksburg Railroad Company in respect to its claim for betterments.   The priority of the lien of the Bradley deed over the Kinzer deed is *res judicata* as between the two; and, as the former deed antedates all other liens by deed or judgment upon the property of the company, it must have precedence over them all, unless there be something in the objection, that the guarantee of the city of Washington to the holders of the bonds of the railroad company was *ultra vires*, as being in conflict with the tenth section of the city charter of 1848.   On this subject it may be remarked that there has been a direct adjudication by the court of highest resort in Virginia, where the property embraced in this deed lies, that notwithstanding this objection, the Bradley deed is a lien upon the property of the Alexandria & Washington Company as of the twenty-third of July, 1857. It is true that this decree does not, in a technical sense, conclude those who were not parties to the suit in which it was rendered; but it carries all the authority of a decision of the highest court of the state in which the land affected by it lies, upon a question directly raised before it.   Independently of these considerations, it may be added that the mortgage secured the bonds and created a valid lien on the property.   When the city took up these bonds this lien was not vacated.   The cancellation of the city's signature on the bonds did not cancel the liability of the railroad company for their payment.   The city might have contested her liability on the bonds, but the subsequent lienholders are in no condition to contest the title of the city to the bonds.   It is a matter of no importance to them, whether the city gets the money, or some one else.   The debt is still owing by the company, and the lien for its security is a valid one. So, the conclusion of the court is, that the Bradley deed is a first lien by deed or judgment upon the property of the Alexandria & Washington Company, dating as of the twenty-third of July, 1857, for the debt it secures, as reported by Commissioner Fowler.

The Lennox deed is really not disputed, and having been recorded on the twenty-fourth of July, 1857, antedates and ranks all deeds and judgments, except the Bradley deed.   It is true that Lennox, the trustee, had personal notice of the execution; but this notice to him cannot bind the bondholders whom he represents, who took the bonds without notice.   For all purposes of notice, the trust deed must, in this case, be treated as executed to the bondholders.

The Hay judgments and the claim of Fowle, Snowden & Co., as this latter is represented by the Kinzer deed, and by the decree of the cir-

cuit court of Alexandria county, rendered on the twenty-fifth of May, 1859, must now be considered. Two of the Hay judgments antedated the decree; two of them were simultaneous with the decree, (the two judgments and the decree having taken effect as of the first day of the same term of the court which rendered all of them, viz: the sixteenth of May, 1859;) and three of the judgments were subsequent to the decree.

It will be necessary to consider the objections urged respectively against the claim of Fowle, Snowden & Co., and the Hay judgments.

*First,* of Fowle, Snowden & Co.'s claim. The circuit court of Alexandria county, in a case in which that question was directly presented before it, decided that the Kinzer deed was not legally recorded in pursuance of the registration laws of Virginia, and did not constitute a lien upon the property of the Alexandria & Washington Company. Appeal was taken by Fowle, Snowden & Co., to the court of appeals of Virginia; the appellants in their petition for the appeal assigning as a ground of error, that the court below pronounced the registration absolutely illegal, and not merely as it should have done, subordinate to the Bradley deed. The appellate court rendered a general decree of affirmance, thereby establishing the validity and finality of the decree below. It is true that the judge who delivered the opinion discussed only the question whether Fowle, Snowden & Co. had notice of the previous execution of the Bradley deed when they took the Kinzer deed, but the decree itself, which was the act of the whole court, affirmed the decree below generally, and made no such limitation of affirmance in its decree as the individual judge had done of argument in his opinion. In a very recent case, that of *Davis* v. *Beazley,* 75 Va. 491, the supreme court of appeals has put the matter at rest in this state by holding that the grantee or beneficiary in a deed is not allowed, as an officer, to take an acknowledgment of the deed by the grantor, with a view to its registration; that the certificate of such acknowledgment is invalid, and hence a recordation of it based upon such certificate is without effect. We are therefore relieved of the necessity of considering whether this court, in an original case, would hold that a director of a corporation, which makes a trust deed preferring himself over other creditors, is incompetent to take and certify the acknowledgment of that deed for registration in the additional capacity of notary public; especially a deed which was agreed to be held for a time from registration.

The debt of Fowle, Snowden & Co. therefore having no footing as a lien by virtue of the Kinzer deed, stands exclusively upon the decree of the twenty-seventh of May, 1859, establishing it. It is stated by opposing counsel that no execution was ever taken out on this decree. It does not seem to be pretended by any one that execution was ever issued. The record does not show that it ever was. Not only have ten years elapsed since the decree, but 20 years. As to adverse lien creditors, the right to sue out a writ of *scire facias* upon

the decree is lost, and the right to bring an action upon it is gone. What, then, is the *status* of the lien of the decree? A Virginia text-writer of eminence, Prof. Minor, lays it down that the lien of a judgment is suspended when the right to revive it by *scire facias* or action is lost. 2 Minor, Inst. 272. And Mr. Barton, another text-writer, has this passage, referring to the twelfth section of chapter 182, Code 1873:

"The right to enforce the lien of a judgment, although the statute (in section 9) delares that it may *always be enforced* in a court of equity, is confined to the time that an action may be brought, or *scire facias* sued out thereon, and after that time the lien ceases to exist." See 1 Barton, Ch. Pr. 109.

The debt of Fowle, Snowden & Co. is bottomed therefore on no lien, and is to be treated in this suit as an unsecured claim against which a plea of the statute of limitations has not been interposed.

Coming now to a consideration of the Hay judgments. Four of them had been assigned to Hay by the original plaintiffs after they had been recovered. The plaintiffs in two of the four suits were citizens of Massachusetts, and the judgments assigned were rendered respectively on the twenty-fifth of November, 1857, and on the ninth of February, 1858. The other two of these four judgments were recovered by residents of Virginia, and assigned to Hay, bearing date on the twenty-seventh of May, 1859, but taking effect as of the sixteenth of May, 1859. On these four judgments Hay brought an equity suit in this court in 1875, in which he prayed that the *satisfactions* which he had caused to be marked on these judgments in 1860 might be set aside, and the liens which had originally attached to the judgments might be restored. Decree was obtained in this court in 1881. It is objected to the validity of the decree that this court had not jurisdiction as to two of the judgments, to entertain a suit brought by Hay on them, inasmuch as the second clause of section first of the judiciary act of 1865 (Supp. Rev. St. p. 174, c. 137) declares that the circuit courts of the United States shall not have cognizance of suits brought by assignees of causes of action, where their assignors could not sue. Waiving the question whether the decree under consideration can be assailed collaterally, it is to be remarked, that the object of the equity suit brought by Hay in this court was to set aside "satisfactions" which had been marked upon the judgments at a time when they had become the property of Hay. The consideration for which they had been so marked had proved null and void. The satisfactions had been executed on an implied promise of the company, to Hay himself, that if the consideration should fail, the company would make good the judgments. This obligation, arising *ex equo et bono*, from the company to Hay himself, was the cause of action on which the equity suit was founded. It was a cause of action arising directly in favor of Hay, irrespectively of the manner in which he had acquired this property, and the jurisdiction of this court to entertain a suit by Hay, a non-resident, against the Alexandria & Washington Company, a resident of Virginia, upon

this cause of action which had accrued to himself was complete. But even assuming, what is not true, that the original causes of action on which the judgments had been obtained in the state court were still the basis of the equity suit brought in this court, even in that case the jurisdiction of this court was good. Two of the judgments had been recovered by citizens of Massachusetts, the other two by citizens of Virginia. As to the first two, the jurisdiction was undoubted. The owner of these brought the suit; and the only question is, whether he had a right to join in his suit two judgments against the same defendant which had been assigned to him with no purpose or intention of evading the jurisdiction of the state court. This question would seem to be settled by the first clause of the first section of the act of 1875, which provides in substance that the circuit courts of the United States "shall have cognizance of all *suits*, etc., in which there shall be a *controversy* between citizens of different states, etc." The controversy of Hay respecting the judgments as to which the jurisdiction was undoubted, gave under this clause jurisdiction of the suit which embraced two other controversies which were not between citizens of different states. It is true that the clause of the act of 1875, on which this objection is based, would not authorize causes of controversy to be embraced in a suit which had been assigned for the purpose of having them sued upon in a United States court. Section five of the same act forbids assignments for such a purpose; but this very section, by forbidding the joining of causes of action assigned for this purpose, impliedly authorizes causes of action not assigned for such purpose to be so embraced. If a suit is found to embrace causes of action assigned for this purpose, the court will dismiss it as to such causes of action, retaining it as to the others, as was done by the supreme court of the United States in *Inhab. of the Township of Bernards* v. *Stebbins*, decided at the present term and reported in 109 U. S..341, and also in 3 Sup. Ct. Rep. 272. This principle has been frequently applied *as to parties* by the supreme court, in suits in which the court has held that though all the plaintiffs and all the defendants marshaled on opposite sides of a cause, were not residents of different states, yet if there be a separable controversy between citizens of different states, that fact may of itself give jurisdiction of the whole suit. If a separable controversy *as to parties* can bring a suit into a federal court, there would seem to be no reason why a separable controversy *as to causes of action* should not do so; except, indeed, in suits where a fraud upon jurisdiction is attempted, as contemplated by section 5 of the act of 1875. These four judgments having therefore been legally relieved of the "satisfactions" that were marked upon them, and the liens which they created having been legally restored, must take rank as of the twenty-fifth of November, 1857, the ninth of February, 1858, and the sixteenth of May, 1859, respectively; and must be given precedence over the debt of Fowle, Snowden & Co.

As to the objection that these four judgments, and the three others that were sued over in this court by Hay, and judgment anew obtained upon them in 1881, were *merged* in the new decree and judgment, it is to be remarked that one of the objects of section 12 of the 182d chapter of the Code of Virginia, in requiring judgments to be kept alive by *scire facias,* or new action, within 10 or 20 years, according as the issuing and return of executions on them might determine, was to provide a means of keeping alive judgments and their liens; and of quieting titles where judgment creditors slept too long on their rights. It is therefore a very strange pretension that the pursuit of the very remedies given by the state to keep alive judgments, and their liens, merges and extinguishes them. Although executions had been taken out on the original judgments owned by Hay, much time had elapsed when his suits were brought upon them in this court in 1875. Doubtless the provisions of section 12 of the 182d chapter of the Code suggested and induced those actions; and this court is unwilling to hold, in view of these statutory requirements, that the plaintiff in those suits, by complying with those requirements, lost the very rights which he was seeking to perpetuate. Whatever may be the general doctrine in other jurisdictions, as to the merger of one judgment into another, it cannot be so applied in Virginia as to convert the statutory provisions that have been alluded to into a delusion and a snare. Besides, it is to be observed, as to the four judgments which were the subject of the equity suit, that suit was brought, not to obtain a new judgment upon the old ones, but to strike from the old ones an inscription which rendered them practically valueless, and to restore to them their original force and attributes. The object was the opposite of merging them, if that were the necessary effect of obtaining a new judgment on an old one. It was to place them *in statu quo* as of the dates on which they were originally recovered, divested of the satisfactions which had been improvidently put upon them. The doctrine of merger, therefore, whatever it may be in ordinary cases, does not apply to these four judgments.

Summing up what has been said, the several debts stand as to each other in the following order: (1) the debt due the city of Washington; (2) the bonds held under the Lennox deed; (3) the Hay judgments, seven in number; and (4) the unsecured claim of Fowle, Snowden & Co.

It remains to be considered how these several claims stand in respect to the claim for betterments put upon the western 18½ feet of the roadway of the Alexandria & Washington Company while in possession of the Alexandria & Fredricksburg Railway Company under the proceedings taken in the county court of Alexandria county. It is clear that this claim can only affect the western strip of roadway that has been mentioned; and the conditions prescribed by statute entitling the Alexandria & Fredricksburg Company to compensa-

tion for betterments seem to exist here. It is true that there is a profuse ascription of fraud against this company in the briefs of adverse counsel; but no proof has been made in the evidence establishing that fraudulent means were used by the company to secure the condemnation of the ground in question, or to obtain control of the Alexandria & Washington Railroad Company and its property. We have only to consider what and how allowance is to be made to this company for its betterments. The control of this road from Alexandria to the Long bridge must have been of much greater importance, and the use of it of much greater value, to the Alexandria & Fredricksburg Company, and its associate companies north and south, than could be measured by the *pro rata* receipts of net earnings in money, which accrued to it from that short section of road, especially if no account is taken of the five years' rent, which the Alexandria & Washington Company might be entitled to as a credit under the statute of Virginia relating to betterments. It will be safe to assume that the Alexandria & Fredricksburg Company's use and control of the road for 10 years have abundantly compensated it for all outlays it may have made for repairs, taxes, and other incidental charges. Its original outlay of $59,610.07 in constructing the road-bed and track on the western strip is all, therefore, that we think ought to be allowed as a first lien on that strip to the Alexandria & Fredricksburg Company. As to the manner of providing that amount for this claimant, if it cannot be agreed by the parties in interest what proportion the value of this 18½ feet shall bear to that of the whole 50 feet of road, it must be referred to the master to determine that proportion. The road must then be sold as a whole, and the purchase money be separated into two portions to represent respectively the proceeds of the sale of the old part and of the new, and the respective funds applied as has been indicated in this decision.

WAITE, C. J., concurs.