WILLIAM DEERING & COMPANY v. PEHR A. PETERSON and Others.

December 27, 1898.

Nos. 11,319—(58).

### Description of Land Sufficient.

By comparing the description found in one part of the instrument with that found in another part, *held*, the description of the land is sufficiently definite and certain.

### Seed-Grain Loan—Irregularities—Estoppel of Beneficiaries of Loan.

An applicant for a seed-grain loan, under Laws 1893, cc. 225, 226, stated in his application that he had 360 acres of land, but did not state whether or not the same was subject to any mortgage incumbrance. Those acts prohibit persons owning more than 160 acres of land, free from mortgage incumbrance, from receiving such loans. It does not appear that, in granting the application, the statute was complied with in some other respects. *Held*, the applicant having accepted the benefit of the act, he, and all those standing in his shoes, are estopped from asserting that he was not entitled to its benefits, or that the proceedings granting his application were irregular.

### Laws 1893, cc. 225, 226—Title of Act.

*Held*, Laws 1893, cc. 225, 226, are neither of them unconstitutional because the subject of the act is not expressed in the title.

### Same—Taxes—Foreclosure of Lien.

*Held*, the method provided for collecting the amounts so loaned by the state is not unequal taxation, or taxation at all, but a statutory method of foreclosing a statutory lien for money borrowed from the state.

### Same—Appropriation of Public Money—Constitution.

*Held*, said acts appropriate public money for a private purpose, and are therefore unconstitutional.

### Same—Estoppel of Beneficiaries with Notice.

But *held*, he who has taken the benefit of the act, and those claiming under him with actual notice, are estopped to deny the validity of the act.

### Unconstitutional Statute—Presumption.

*Held*, it cannot be presumed that the county or its officials have complied with an unconstitutional statute.

Action in the district court for Marshall county to recover

$103.50, the balance due on a promissory note. John Gillespie, Jr., was garnished. The board of county commissioners of Marshall county obtained leave to intervene as claimant to the property in the hands of the garnishee. Plaintiff demurred to the complaint in intervention. From an order, Ives, J., overruling the demurrer, plaintiff appealed. Reversed.

*S. Cooke* and *Lewis E. Jones,* for appellant.

The title of Laws 1893, cc. 225, 226, does not conform to Const. art. 4, § 27, under the rule laid down in State v. Smith, 35 Minn. 257. See also State v. Young, 47 Ind. 150. These chapters also contravene Const. art. 9, § 1, for the reason that the intention of the legislature, as therein expressed, was to make the collection of the money appropriated enforceable by a tax, and not by proceedings, such as would be invoked were it a debt. See Cooley, Taxn. (2d Ed.) 1; Yeatman v. King, 2 N. D. 421; Davidson v. New Orleans, 96 U. S. 97. The act also violates the constitution in that it appropriates public money for a private purpose. See Cooley, Taxn. 126. A similar statute was declared illegal in State v. Osawkee, 14 Kan. 418. An act is void which levies a tax for public purposes, coupled with a provision relating to taxes for private purposes. Coates v. Campbell, 37 Minn. 498. See also Lowell v. City, 111 Mass. 454; Rippe v. Becker, 56 Minn. 100; State v. City, 42 So. C. 222; McCullough v. Brown, 41 So. C. 220. The act also violates Const. art. 9, § 10, forbidding the loaning or giving of the credit of the state in aid of any individual, association or corporation. Rippe v. Becker, supra. See also Loan Assn. v. Topeka, 20 Wall. 655; Parkerburg v. Brown, 106 U. S. 487; Kelly v. Seely, 27 Minn. 385; Wallace v. Palmer, 36 Minn. 126.

*Leo. S. Bayrell,* for respondent.

The title of Laws 1893, cc. 225, 226, conforms to Const. art. 4, § 27, according to the rule announced in State v. Cassidy, 22 Minn. 312. See also Board of Suprs. v. Heenan, 2 Minn. 281 (330); State v. Madson, 43 Minn. 438; Johnson v. Harrison, 47 Minn. 575; Henkle v. Town, 68 Iowa, 334; Reimer v. Newell, 47 Minn. 237; State v. Board of Commrs. of Red Lake Co., 67 Minn. 352. Certain portions

of a public act may be unconstitutional without tainting or affecting the remainder. The valid provisions will remain and be operative, while the unconstitutional provisions will have to fall. Henkle v. Town, supra; Reimer v. Newell, supra. As to appellant's contention that the act is void since it contravenes the public policy of the state to appropriate money for such a purpose, or for the state to engage in trade and the ordinary occupations of life, see State v. Nelson, 1 N. D. 88.

CANTY, J.

The garnishee herein disclosed that he had in his possession and under his control 144 bushels of wheat, the property of defendant. It is also to be inferred from the disclosure that defendant held the title to this wheat under a chattel mortgage given by one Herman Peterson on his crop. It appeared also on the disclosure that Marshall county made a claim to the wheat. Thereupon the board of county commissioners of that county intervened as claimant, and alleged in their complaint that on March 25, 1893, said Herman Peterson was, and ever since has been, the owner and in actual possession of certain described land in that county, on which the wheat in question was raised; that on said March 25 he applied, under Laws 1893, cc. 225, 226, for money to buy seed grain; and that the money was furnished him. The application, and all the proceedings had in procuring the money, are set out in said complaint, and the intervenors claim a lien on the wheat in question for the repayment of the money.

Plaintiff demurred to the complaint on the ground that it does not state a cause of action, and on the ground that there is a defect of parties claimant, and appeals from an order overruling the demurrer.

Chapter 225 is entitled "An act to appropriate money for seed-grain loans to farmers in this state whose crops were destroyed by hail or storms last year." The act appropriates $75,000 out of the state treasury for such purpose, and provides that any person desiring to avail himself of the benefits of the act shall file his application with the town clerk, who shall forward it to the county auditor, who shall publish a notice that the board of county commis-

sioners will meet at his office on a day named for the purpose of considering the allowance of relief to such applicants. It is further provided that the board shall at such time fix and determine the amount to be allowed to each applicant, the county auditor shall furnish a copy of the resolution to the state'auditor, and the governor, state treasurer and state auditor shall meet and distribute the appropriation among the several counties in which relief is sought. It is further provided (section 2),

"That any person or persons owning more than 160 acres of land free from mortgage incumbrance, whether the same be cultivated or not, shall be deprived from any of the benefits as set forth in this act."

The act further provides (section 3) that,

"The county auditor shall levy a tax against the land for which such seed-grain loan may be granted, and on which such loan is hereby declared to be a lien, which shall take precedence over any and all incumbrances."

Section 5 provides,

"That such tax shall be paid in three instalments as nearly equal as may be, and be included in the tax levy for the years 1894, 1895 and 1896."

Section 6 provides that, to distribute the money appropriated, the state auditor shall draw a warrant on the state treasurer for the amount allowed each county, and the county auditor shall thereupon draw his warrant on the county treasurer for the amount allowed each person. Section 7 provides that all moneys collected on such seed-loan tax shall be paid over to the state treasurer, and section 8 provides that, whenever such tax remains unpaid and becomes delinquent, the board of county commissioners shall order the amount thereof paid to the state treasurer out of the county treasury. Chapter 226 amends chapter 225 in several particulars, and declares the seed-grain loan a lien on the land for which the loan was made,

"And upon the crop of grain raised each year by the person receiving such loan until such amount is fully paid."

It also provides that such lien "shall take precedence over any and all incumbrances acquired subsequent to the lien of such loan."

1. There is nothing in appellant's claim that the application of Herman Peterson for the seed-grain loan, set out in the intervenor's complaint, does not state the land which he owns or that he owns any land. The third question in the application, and the answer thereto, is as follows:

"(3) Give full description of land, with the number of acres owned. 160 on Sec. 10, Town 158, range 48; 80 acres on Sec. 9; 40 acres on Sec. 17; and 80 acres on Sec. 19."

True, this does not state what part of the section each parcel of land is in, but the twelfth question is,

"(12) Give description of land upon which you intend to sow seed grain,"

And the answer to this question gives the same description and same number of acres, with the addition of the government subdivision of the section, and states that all of the land is in township 158, range 48.

These proceedings must be construed liberally in favor of the state, and it should be presumed that the same land is referred to in the third answer as in the twelfth answer in the application. The law did not permit him, because he owned land in one place, to obtain state aid to procure seed grain to sow in another place.

2. The application shows that Herman Peterson owned more than 160 acres of land, to wit 360 acres, and it does not appear, by the application or otherwise, that there was a mortgage incumbrance on any of it. Appellant contends that, as the statute prohibits every person owning more than 160 acres of land, free from mortgage incumbrance, from taking the benefits of the act, the whole proceeding is void. It does not appear that the statutory notice was given of the meeting of the board of county commissioners to act on the application for seed-grain loans. It is not alleged that certain other provisions of the law were complied with. Appellant contends that for these reasons the state gave away its

money improvidently, and without the right to reclaim it under the law. We cannot so hold.

These proceedings were not in invitum, but were voluntary on the part of Herman Peterson, and, in our opinion, he is estopped, while taking the benefit of the statute, from denying that the statute has been complied with; and all those standing in his shoes are likewise estopped.

3. There is nothing in the claim that chapters 225 and 226 are each unconstitutional because the subject of each act is not expressed in its title.

4. Neither is there anything in the claim that the method of collecting the amount loaned by levying a tax on the land is unequal taxation. It is not taxation at all. It is a statutory method of foreclosing a statutory lien for money loaned. Besides, that point does not concern appellant, as the claim here made by the intervenor is not under the statutory provisions for levying a so-called tax, but under the provision declaring the amount due a lien on the crops of grain thereafter raised on the land.

5. But there is one ground on which, in our opinion, this statute is unconstitutional. It appropriates public money for a private purpose. It is well settled that public money may be appropriated for the support of paupers, but the statute in question does not limit the appropriation to those who are paupers. On the contrary, it permits every one who has not more than 160 acres of land, free from mortgage incumbrance, to borrow from the state. A person might have 10,000 acres of land, worth $100,000, subject to a mortgage of only $500, and he would be entitled, under the terms of this act, to borrow from the state. He might also have one million dollars' worth of personal property, and still he could borrow from the state. Section 10 of article 9 of the constitution provides:

"The credit of the state shall never be given or loaned in aid of any individual association or corporation."

If the state cannot loan its credit, it cannot borrow the money on its own bonds, and then loan the money. It cannot do indirectly what it cannot do directly.

It was held in Coates v. Campbell, 37 Minn. 498, 35 N. W. 366,

that a village cannot issue bonds to aid in an enterprise partly public and partly private.

Taxation cannot be imposed for a private purpose, and, if the state can appropriate for a private purpose the money in its treasury and then replace it by taxation, it can do indirectly what it cannot do directly.

The cases of Lowell v. City, 111 Mass. 454, and State v. Osawkee, 14 Kan. 418, are much in point. The latter case holds that no one can obtain such public aid unless he is actually a pauper, however imminent and immediate the danger of his becoming such. It may be that, if this question were before us, we should not go thus far, but would hold that, in the midst of such a great public calamity, a person who is within one degree of being a pauper, and in imminent and immediate danger of becoming such, may, for the purpose of preventing him from becoming such, be given aid by the state or municipality without violating the constitution. Such was the holding in State v. Nelson, 1 N. D. 88, 45 N. W. 33. But that question is not before us in this case. Our statute did not confine its benefits to those who were a public charge and those in imminent and immediate danger of becoming such.

6. However, it does not follow that, because the act in question is unconstitutional, the state has no claim for the money received from it by Herman Peterson. When a party dealing with a corporation has received from it the consideration for the contract, he is estopped to assert that such contract is ultra vires on the part of the corporation. 27 Am. & Eng. Enc. 363. We see no reason why this principle should not be applied in favor of public or municipal corporations as well as of private corporations, and are of the opinion that it should be applied in this case.

The provisions of, the statute constitute the most of the ultra vires contract which Herman Peterson and those standing in his shoes are estopped to deny. And those who acquired from him a lien or interest subsequent to the lien of the state, with actual notice of the rights of the state, are in no better position than he is. But, of course, third parties, who have received no notice but the constructive notice provided for by this unconstitutional statute, are not affected thereby, and the state's lien is not protected

against rights subsequently acquired by third parties in good faith, without notice, and for a valuable consideration. But whether a plaintiff, who institutes garnishment proceedings without notice of a prior unrecorded lien on the defendant's property in the hands of the garnishee, will prevail over that lien, is a question which we will not now decide.

True, the statute provides that service of the garnishee summons "shall attach and bind" the property in the hands of the garnishee. G. S. 1894, § 5309. But it is generally held that the recording of a lien or chattel mortgage is a substitute for a transfer of the possession from the debtor. Jones, Chat. Mort. (4th Ed.) §§ 236, 329. Of course, property garnished is always found in the possession of a third party, the garnishee, not in the possession of the debtor. But none of the questions here suggested have been argued, and it is not necessary to decide them in order to dispose of this appeal.

The burden is on the plaintiff to show that it acquired its lien without notice of the lien of the state. See Nickerson v. Wells-Stone Merc. Co., 71 Minn. 230, 74 N. W. 891.

7. Appellant contends that the claim for the seed-grain loan belongs to the state, and that the state, and not the county of Marshall, should intervene as claimant. The money was loaned by the state, and the county officers were at first mere agents of the state to collect the amount due it. But, by the terms of the act, the tax to repay the loan should have been levied by the county, and, if levied, has long since become delinquent. Chapter 225, § 8, provides that, if such tax shall remain unpaid and become delinquent, the amount thereof shall be paid to the state out of the county treasury. If the act was constitutional, we might have to presume that all of these things have been done.

It is presumed that public officers do their duty. But we cannot presume that the county has complied with this unconstitutional statute, and paid the state the amount of the delinquent tax, so as to be subrogated to the rights of the state, and the claimant's complaint does not allege that the county has done so. For this reason the demurrer to that complaint should have been sustained.

Order reversed.