CITY OF FERGUS FALLS v. FERGUS FALLS HOTEL·COMPANY and Others.[1]

June 11, 1900.

Nos. 12,167—(83).

**Illegal Loan by Municipal Corporation.**

The officials of a municipal corporation, in violation of law, loaned its money to a private person, taking as security a mortgage upon certain property. *Held*:

**Foreclosure of Lien.**

1. That the city may invoke the powers of the courts to enforce collection of the debt by foreclosure proceedings.

**Ultra Vires—Purchasers with Notice.**

2. Purchasers of the property subsequent to the execution of the mortgage, but with notice of the mortgage lien, cannot take advantage of the fact that the act of the city officials was ultra vires.

**Rulings of Court.**

3. Certain rulings of the court examined, and found to contain no error.

**Evidence.**

4. Evidence examined, and found to justify the conclusion that the city's money was loaned as stated.

Action in the district court for Otter Tail county to foreclose a mortgage. The case was tried before Cant, J., who found in favor of plaintiff. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*John W. Mason* and *Charles C. Houpt,* for appellant.

Municipal corporations have only such powers as are granted by the legislature creating them. Power not granted is withheld; powers granted are strictly construed. 1 Dillon, Mun. Corp. (3d

[1] Reported in 83 N. W. 54.

Ed.) § 89; Coates v. Campbell, 37 Minn. 498. Taking the note and mortgage was not only ultra vires, but was contrary to public policy, and a crime. Penal Code, §§ 136, 369, 370. The city cannot maintain an action on the securities. Ingersoll v. Randall, 14 Minn. 304 (400); 1 Dillon, Mun. Corp. § 458; City v. Montgomery, 31 Ala. 76; Halstead v. Mayor, 3 Comst. 430; State v. Torinus, 24 Minn. 332.

The mortgage is void for every purpose, and cannot be made the basis of estoppel. Langan v. Sankey, 55 Iowa, 52. To constitute estoppel in pais, the acts or conduct of the party claimed to be estopped must have been such as to influence the conduct of another, who must have acted on the faith of such act and conduct, to his damage and injury. Guichard v. Brande, 57 Wis. 534; Jamison v. Miller, 64 Iowa, 402; Preston v. Zekind, 84 Mich. 641; Wetmore v. Royal, 55 Minn. 162; Brown v. Union Depot St. Ry. & T. Co., 65 Minn. 508.

The acts of the city council and of the treasurer were not the acts of the city. The money misappropriated was not the city's money. City of Chaska v. Hedman, 53 Minn. 525.

*James A. Brown, William L. Parsons* and *C. L. Hilton*, for respondent.

Defendant rests on what has been called "the ancient and somewhat threadbare doctrine of ultra vires." Under the law of estoppel, as illustrated by numerous modern decisions, defendant is not at liberty to make this defense. The development of the doctrine of estoppel seems to be commensurate with the decline of the doctrine of ultra vires. 2 Beach, Priv. Corp. § 425. If a contract has been fully executed by one party, and there is no way in which the parties can be placed in the position which they occupied prior to its making, the plea of ultra vires will not be allowed where it will not advance justice, but will accomplish a legal wrong. This is now the prevailing and practically universal rule. National Bank v. Matthews, 98 U. S. 621; Norwalk v. Norwalk, 14 Oh. C. C. 1; Camden v. Mays Landing, 48 N. J. L. 530; Whitney v. Barlow, 63 N. Y. 62; City v. Balcom, 134 N. Y. 532; Rider v. Roach, 97 N. Y. 378; Oil Creek v. Pennsylvania, 83 Pa. St. 160; Day v. Spiral, 57 Mich. 146,

151; Carson City v. Carson City, 90 Mich. 550; Lewis v. American, 98 Wis. 203; Franklin v. Twogood, 18 Iowa, 515; Kadish v. Garden City, 151 Ill. 531; Ward v. Johnson, 95 Ill. 215; Darst v. Gale, 83 Ill. 136, 141; National v. Ahlgren, 63 Ill. App. 475; Central Bldg. & L. Assn. v. Lampson, 60 Minn. 422; Erb v. Yoerg, 64 Minn. 463.   In the cases above cited the question of estoppel has generally been raised on behalf of a private corporation.   Estoppel, as at present interpreted, applies equally to municipal corporations.   City v. Balcom, supra; City v. Turner, 36 Ark. 577; Argenti v. City, 16 Cal. 256; Farmer v. City of St. Paul, 65 Minn. 176; Deering & Co. v. Peterson, 75 Minn. 118.

The disability of the city to take the mortgage could only be raised by itself.   Oregonian Ry. Co. v. Oregon Ry. & Nav. Co., 10 Saw. 464.   See Bigelow, Estop. (3d Ed.) 465.   During the time in which defendant by its conduct has admitted the validity of the mortgage, plaintiff has lost its right of action against Bell and wife and against Evans and Wright.   2 Herman, Estop. §§ 1063, 1066.   Public policy, or public morality, would be far better served by granting the relief.   Boardman v. Thompson, 25 Iowa, 487, 500.

LEWIS, J.[2]

Action by respondent city to foreclose a mortgage upon certain hotel property in the city of Fergus Falls.   Defense, that the city cannot maintain an action to enforce securities taken on a loan, the same being void, against public policy, and ultra vires.   The action was tried by the court without a jury, and resulted in an order for judgment in favor of respondent.   Defendant appeals from an order denying its motion for a new trial.

The trial court found that in 1890 one Bell and wife executed and delivered to the First National Bank of Fergus Falls their promissory note for $10,000, due five years from date, with interest at two per cent., and at the same time, to secure the note, executed and delivered a mortgage upon certain premises in Fergus Falls known as the "Grand Hotel property."   This mortgage was duly recorded, and contained the usual covenants for foreclosure upon default of payment.   The amount of the consideration of the mort-

[2] LOVELY, J., absent, took no part.

gage—$10,000—was paid to Bell by certain officers of the city of Fergus Falls out of the city funds as a loan to him from the city. The bank had no interest in the mortgage, but simply held it in trust for the city, and afterwards, in 1896, executed and delivered to the city a declaration of trust to that effect. In 1898 the bank duly assigned the mortgage to the city, which assignment was duly recorded. After executing the mortgage, in 1891, Bell and wife deeded the property to one George Duryee, and finally the premises were conveyed to defendant in 1892. On the question of notice of the mortgage by defendant when it purchased the property the court found as follows:

"That said defendant, the Fergus Falls Hotel Company, at the time of the making and delivery of said last-described deed, and at all times thereafter, had actual notice and knowledge of the existence of said mortgage, and at all times prior to the beginning of this action, in all its dealings with plaintiff in reference thereto, said defendant recognized and admitted said mortgage as a valid and subsisting lien upon the property therein described; that said mortgage was fully considered and taken into account by said defendant in its negotiations for the purchase of said premises and in arriving at the purchase price to be paid therefor."

The court further found that the property was sold for the 1893, 1894, and 1895 taxes, and that respondent was forced to pay $1,847 to protect the property from loss under tax judgments; that the taxes of 1897 were not paid, and the property was sold for the same in May, 1899. It is further found that on April 30, 1895, the principal was extended for the period of five years, at request of appellant. The interest was paid by appellant up to September 23, 1896. As conclusions of law: That defendant was indebted to the plaintiff in the full amount of the principal, interest, and taxes paid, and that the property be sold to satisfy the same.

1. Sp. Laws 1883, c. 1, subc. 5, § 31, provides:

"No money shall be paid out of the city treasury, except for principal or interest on bonds, unless such payment shall be authorized by a vote of the city council, and shall then be drawn out only upon orders signed by the mayor and countersigned by the city clerk, which orders shall specify the purpose for which they were drawn, and the fund out of which they are payable, and the name of the

person in whose favor they may be drawn, and may be made payable to the order of such person."

The order upon which the city treasurer paid out the money (Exhibit 5) is as follows:

"Fergus Falls, Minn., Sept. 23, 1890.
Please pay to C. D. Wright ten thousand dollars out of the permanent improvement fund belonging to the city of Fergus Falls.
E. Shaver, Acting Mayor.
Wm. Hoefling, Clerk pro tem.
To F. J. Evans, City Treasurer.   $10,000."

Defendant objected to the introduction of this order in evidence upon the ground that it was void on its face, not showing the purpose for which the order was drawn. The objection was overruled, and the order received. This ruling is assigned as error.

Counsel for the appellant take the position that the order was void for the reason assigned, that it would afford the city treasurer no protection if he paid out the city's money on such an order, and for that reason the city cannot predicate any rights upon it. Admitting that the officials of the city council issued a void order, and would be liable for so doing, and that the city treasurer paid out the money without authority, and that the order would not protect him, this only goes to show that the money was obtained from the city by an indirect and illegal manner, through the acts of its officers. The main issue to be determined in this case was whether the city had loaned the money, and could call into action the powers of the courts to enforce the collection of the debt. It is immaterial whether the money was obtained upon an order void upon its face or regular upon its face. Neither is it material whether the officers were acting in good faith, as, no doubt, they were. The only purpose of introducing the order was to show that the money was paid out of the city treasury, and it was properly received.

2. Appellant claims that there was no evidence to justify the finding that the city ever loaned the money to Bell, conceding that he received the benefit of it. The argument is based upon two propositions: (1) That, the order being void, the city treasurer had no right to pay it, and charge the amount to the city. The act

being void, no money of the city passed. (2) That the money coming to the treasurer was deposited in the bank in open account, subject to the treasurer's check; that the city had no money on deposit, but had parted with its title to the bank, upon the theory that the bank acquired title to the money deposited on open account. This may be technically true as a result of the method of bookkeeping; nevertheless, by means of the order, and a check drawn on the city funds in the bank, $10,000 of the city's money was drawn out, and paid over to the use of Bell. This was the ultimate fact found by the court, and the evidence is conclusive.

3. Again, it is urged that the city, having no power to make the loan, cannot invoke the powers of the courts in collecting it.

The city certainly had no authority to loan this money. The act was not within its charter powers; but it does not follow that the city cannot recover it. · It is true that the doctrine of ultra vires is, and ought to be, rigidly enforced in favor of a municipal corporation in order to protect its taxpayers from being plundered by the unlawful acts of its officers. But when, as in this case, a municipal corporation is seeking to have restored to its treasury money taken therefrom under color of an ultra vires contract, it does not lie in the mouth of the beneficiary of the wrongful act, or of his assignee with notice, to say that a lien securing the payment or return of the money is void because the money was obtained by virtue of a void contract; otherwise, the wrongdoer would be permitted to take advantage of his own wrong to the injury of innocent taxpayers. There can be no question about the city's power to collect from Bell if he were alive and solvent, under the decision in City of Chaska v. Hedman, 53 Minn. 525, 55 N. W. 737, and there is no distinction in principle between that case and this. That decision rests upon the theory that the contract on the part of the city by which it paid $500 for the establishment of a shoe factory was void, being beyond its powers. The corporation, as such, had no power to make it, and its officers had no power to bind it. The money having been paid without authority, its payment was not a corporate act, and the corporation could recover the money. The principle applied in that case is not changed by the effect of Penal Code, §§ 136, 369, 370 (G. S. 1894, §§ 6421, 6663,

6664). Those sections apply to public officers, but can have no application to the city as such.

The general rule that the law leaves the parties to an illegal transaction where it finds them, has no application. The officers of the city are not the city. The city cannot be bound by the unlawful acts of its officers in paying out its money. And, if the city may recover the money from those who receive it, why may it not foreclose the mortgage, it being impossible to secure the money, or any part of it, in any other way? There is no difference in principle between the two remedies. The city is only recovering what it can of the funds illegally taken from its treasury. The defendant cannot complain. It bought the property with notice of the city's claim and lien. It is in no worse position than if the loan had been made by a private party. And it would be inequitable to permit it to benefit by the illegal act of the city officials under such circumstances. This right of a municipal corporation to enforce its claims under such circumstances has been recognized or applied in the following cases: Deering & Co. v. Peterson, 75 Minn. 118, 77 N. W. 568; National Bank v. Matthews, 98 U. S. 621; City v. Balcom, 134 N. Y. 532, 32 N. E. 7; Hay v. Alexandria & W. R. Co. (C. C.) 20 Fed. 15.

Order affirmed.

BROWN, J. (dissenting).

I dissent. My reason for doing so is not that I do not share the sympathy of my brethren for the city of Fergus Falls and its taxpayers, but because the conclusion reached by them is not in harmony with the law as we find it in the books, and is subversive of the best interests of taxpayers and municipalities generally. The decision will tend to encourage public officials inclined in that direction in the notion that public funds may be lawfully invested in private enterprises, and establish a rule that, although a crime to so divert such funds, the legality of the transaction can be called in question in a civil action only when the interests of the municipality demand that it be impeached. The public interests would be best subserved by a square, blunt decision that public funds cannot be so used, and that contracts of this kind are a nullity, and cannot be enforced.

There is no controversy or dispute as to the facts. The complaint alleges, and the court below found, that the city of Fergus Falls loaned to one Dawson Bell the sum of $10,000, to be repaid in five years, with interest at the rate of two per cent. per annum. At the time of the loan Bell owned the real property described in the complaint, and executed to C. D. Wright, in trust for the city, a mortgage thereon as security for such repayment. Wright subsequently assigned the mortgage to the city, and it now seeks to foreclose it. Bell is dead. Defendant hotel company has succeeded to his title to the property, but did not, in the purchase thereof, assume or agree to pay the mortgage debt. It does not appear that the money so loaned Bell was used in the purchase or improvement of the mortgaged property. From aught that appears, the loan was an ordinary business transaction, and the city offers no suggestion that its officers exceeded their authority, but, on the contrary, affirms, adopts, and approves their conduct.

The real question in the case is whether municipal corporations of this state can engage in the loaning business, and as this question is answered so should the case be decided. It is generally understood that such corporations are limited and restricted in their contracts and dealings to matters essential to the good order and government of the municipality and the comfort and welfare of the inhabitants. Contracts with individuals in the interests of private affairs are beyond their authority, and void. This rule is one universally recognized and applied. That the contract involved in this case was one with an individual, and in the interests of private affairs, is not disputed. That the loan of public funds to further and promote private objects and interests is against the best interests of the municipality whose funds are so loaned, and against public policy, cannot for a moment be doubted. That such a transaction is not only beyond the legitimate authority and power of the municipality, and, in this state, a palpable violation of positive law, cannot be denied. Yet this court solemnly declares the same a valid and enforceable contract and transaction.

The rigor of the old rule of ultra vires has been much relaxed of late years, especially as to private corporations, and the doctrine of estoppel is now often applied to the end that justice may be

done. As to contracts merely ultra vires,—that is, contracts not within the express or implied delegated authority of the corporation,—the doctrine of estoppel is applied to prevent a party who has received the benefit of a part performance from setting up want of authority in the corporation as a defense to a performance on his part. And perhaps this doctrine has been applied in some cases for a like purpose where the contract is not 'only ultra vires, but illegal, because prohibited by law. But the great preponderance of the authorities hold the illegal contract wholly void, and incapable of ratification. 1 Beach, Pub. Corp. §§ 217, 218, 248; Ottawa v. Carey, 108 U. S. 110, 2 Sup. Ct. 361; Smith v. City, 77 N. Y. 130; McDonald v. Mayor, 68 N. Y. 23; Lewis v. City of Shreveport, 108 U. S. 282, 2 Sup. Ct. 634; Board v. Arrighi, 54 Miss. 668; Oregonian Ry. Co. v. Oregon Ry. & Nav. Co., 10 Saw. 464, 22 Fed. 245, 23 Fed. 232.

Such contracts are on a par with illegal contracts between individuals, and possess no greater virtue because made by a corporation. And the rule is, as I understand it, that, whether partly performed or not, they are utterly void, and cannot be enforced. See authorities supra, and 1 Beach, Pub. Corp. § 217, et seq.; Sutro v. Pettit, 74 Cal. 332, 16 Pac. 7. Says Blackburn, J., in Riche v. Ashbury, L. R. 9 Exch. 224, 262:

"I do not entertain any doubt that if, on the true construction of a statute creating a corporation, it appears to be the intention of the legislature, expressed or implied, that the corporation shall not enter into a particular contract, every court, whether of law or equity, is bound to treat a contract entered into contrary to the enactment as illegal, and therefore wholly void."

The right of the city of Fergus Falls to collect and expend public money is limited by the act of the legislature creating it to public purposes, and a diversion of such funds to a private purpose is not only beyond its delegated authority, but palpably against public policy, and should for this reason, if for no other, be held void. But such a diversion of public funds is expressly made a felony by section 369 of our Penal Code (G. S. 1894, § 6663), and this renders the transaction wholly illegal, irrespective of other considerations. But my brethren say that the city is not responsible for the un-

lawful acts of its officers. This may be, and doubtless is, true, as a general proposition of law, but cannot be true when applied to a city attempting to enforce a contract which is the result and grows out of such unlawful conduct. If a municipality departs from its true character, and enters into competition with money loaners, it must submit to the law applicable to the business thus engaged in. It is elementary that a principal cannot adopt or ratify a contract made by his agent in violation of his authority in part and reject it in part. If the principal ratify such a contract, he must take it clothed with such virtues and benefits as it is possessed of, and burdened with such inequities and illegal features as the transaction giving it existence surrounds it. 1 Am. & Eng. Enc. 1192, and cases cited. A municipal corporation cannot enter the field of commercial enterprises without subjecting itself to all commercial laws and usages. In Newbery v. Fox, 37 Minn. 141, 33 N. W. 333, this court said, at page 143:

"The doctrine of ultra vires has, with good reason, been applied with greater strictness to municipal bodies than to private corporations. * * * A different rule of law would, in effect, vastly enlarge the power of public agents to bind a municipality by contracts, not only unauthorized, but prohibited, by the law. It would tend to nullify the limitations and restrictions imposed with respect to the powers of such agents, and to a dangerous extent expose the public to the very evils and abuses which such limitations are designed to prevent."

Judge Dillon says:

"The history of the workings of municipal bodies has demonstrated the salutary nature of this principle, and that it is the part of true wisdom to keep the corporate wings clipped down to the lawful standard."

But the law of ultra vires, as applied to contracts merely in excess of corporate power, is not the law by which this case should be judged. We have the additional element of illegality, and the law with respect to illegal contracts should control. Comyn, in his work on Contracts, lays down the law as follows:

"And this distinction is taken in the books, namely, where the action is in affirmance of an illegal contract, the object of which is

to enforce the performance of an engagement prohibited by law, clearly such an action can in no case be maintained; but when the action proceeds in disaffirmance of such a contract, and, instead of endeavoring to enforce it, presumes it to be void, and seeks to prevent the defendant from retaining the benefit which he derived from an unlawful act, then it is consonant to the spirit and policy of the law that plaintiff should recover."

This is the law to-day, and is supported by the great weight of authority. It applies to this case, because the transaction here in question is not only illegal as against public policy, but illegal because a violation of law. See State v. Torinus, 24 Minn. 332; Bisbee v. McAllen, 39 Minn. 143, 39 N. W. 299. In Borough of Henderson v. County of Sibley, 28 Minn. 515, 11 N. W. 91, and City of Chaska v. Hedman, 53 Minn. 525, 55 N. W. 737, the unlawful contract and the illegal acts of the public officers were repudiated, and the action was to recover the money unlawfully taken from the treasury. This same remedy should have been resorted to by the plaintiff, instead of attempting to ratify and confirm the illegal conduct of its officers.

My brethren make no attempt to distinguish this case from State v. Torinus, supra, which is directly in the teeth of their decision. Neither do they explain why there should be a departure from Bisbee v. McAllen, supra. In that case there was a sale of groceries and provisions, and the defendant pleaded as a defense to an action to recover the purchase price thereof that plaintiff's weights and measures by which the goods were sold had not been sealed and tested as required by the statute of the state. The court held the transaction illegal, and that plaintiff could not recover. There was no attempt to apply the doctrine of estoppel in that case, though equity and good conscience would seem to have justified its application, if it can be justified in this case. The transaction involved in this case was void ab initio because of its illegality, and I submit that life could not be infused into it by even a most vigorous application of the doctrine of estoppel. 1 Am. & Eng. Enc. 1182, et seq. The case of City v. Montgomery, 31 Ala. 76, is directly in point. It is there said, at page 88:

"It is further urged in favor of the maintenance of this action,

that inasmuch as the plank-road company has had the benefit of the city bonds, and obtained them on the faith of the contract which is the subject of this suit, the obligors in this bond should be held estopped from disputing the authority of the city to make the contract. If this doctrine be established, then corporations, no matter how limited their powers, may make themselves omnipotent. They have only to induce persons to contract with them beyond the scope of their powers, and their very usurpations have the effect of conferring powers on them which the legislature have withheld. A proposition so erroneous can scarcely need argument to overturn it. See, on this point, Pennsylvania v. Dandridge, 8 Gill & J. 248, 320, and authorities cited; Albert v. Savings, 1 Md. Ch. 407, 413; Smith v. Alabama, 4 Ala. 558; Hodges v. City, 2 Denio, 110; Life v. Mechanics, 7 Wend. 31; New York v. Ely, 5 Conn. 560. It will be remembered that, in this case, it is the corporation itself which sues. The suit is an attempt to enforce a contract which the corporation had no authority to make, save as above indicated. We cannot apply the doctrine of estoppel to such a case as this."

Defendant is not estopped from denying the validity of the mortgage merely because it succeeded to Bell's title to the property. Calkins v. Copley, 29 Minn. 471, 13 N. W. 904; Gerdine v. Menage, 41 Minn. 417, 43 N. W. 91. Farmer v. City of St. Paul, 65 Minn. 176, 67 N. W. 990, is not in point. It appeared in that case that the city of St. Paul was liable for the care and support of persons committed to prison by the municipal court of that city. Such prisoners were committed to the House of Good Shepherd, which was not a public prison or workhouse, and the court held the contract between the city and the persons in charge of such House of Good Shepherd for the support of such prisoners to be unauthorized, but very properly held that it was only "technically illegal"; this result no doubt being founded on the fact of the liability of the city to pay the expense of such persons at some proper place of confinement, and no illegal obligation was in any way created. Neither is the case of Deering & Co. v. Peterson, 75 Minn. 118, 77 N. W. 568, in point. In that case it appears that the legislature had authorized the loan of seed grain to farmers who had lost their crops by hail, and the contract involved was made and entered into in accordance with the requirements and commands of the statutes, and not, as in this case, in violation thereof. This court, subsequent to the date of the contract, declared the seed-grain law un-

constitutional, thereby rendering the contract, as said in Farmer v. City of St. Paul, supra, "technically illegal."

For these reasons I think the order appealed from should be reversed, and a new trial granted. If this decision be followed in the future, cities, towns, and villages of this state may understand that it is lawful to appropriate funds from the public treasury for investment in boot and shoe factories, brick yards, and hotels and lunch counters.