DULUTH BANKING COMPANY v. MART B. KOON and Others.[1]

December 5, 1900.

Nos. 12,382—(119).

**Laws 1897, c. 290, Unconstitutional—Taxes.**

Laws 1897, c. 290,—an act for the enforcement of the collection of delinquent taxes in counties in which certain conditions existed at the time therein specified,—is repugnant to the constitution, because it is special legislation as to the affairs of counties, and does not operate uniformly throughout the state.

Action in the district court for St. Louis county to determine adverse claims to land. The case was tried before Ensign, J., who found in favor of plaintiff. From a judgment entered pursuant to the findings, defendants appealed. Reversed.

*S. T. & Wm. Harrison* and *John G. Williams,* for appellants.

*H. F. Greene,* for respondent.

*Wm. B. Phelps,* County Attorney, filed a brief in behalf of St. Louis County.

COLLINS, J.

The issue here is a single one, arising in an action to determine adverse claims to forty acres of land. It is agreed that plaintiff has no title to, or claim upon, the forty unless it is the owner by and through certain tax proceedings and a tax certificate issued under the provisions of Laws 1897, c. 290, which is entitled

"An act to enforce the payment of taxes which became delinquent on or before the first Monday in January in the year one thousand eight hundred and ninety-seven, and to extend the time for payment of said taxes under certain conditions, in all counties where the taxes delinquent in the year 1897 and prior years, excepting taxes barred by the statute of limitations, exceed the sum of thirty mills on the dollar of assessed valuation of real property in such county for the year 1896."

The first section is as follows:

"In any county in this state in which the taxes which appear to

[1] Reported in 84 N. W. 6.

have become delinquent on the first Monday in January, 1897, and prior years, excepting such taxes the enforcement of which shall be barred by the statute of limitations at the time of the passage of the resolutions hereinafter referred to, exceed the sum of thirty mills on the dollar of the assessed valuation of real property in such county for the year 1896, which fact the board of county commissioners of such counties shall find and declare by resolution adopted at some regular or special meeting held on or before the first day of August, 1897, it shall be the duty of the county auditor at the time of making the list of delinquent taxes in the year 1898, as required by section 70 of the general tax laws, to make out and append to such delinquent lists a list of all taxes upon real estate in the county which appear to have become delinquent in the year 1897, or any prior year or years, and have not been satisfied by payment, redemption or sale of the real estate to actual purchasers."

The second section prescribes the proceedings to be had in reference to advertisement, judgment, and sale of the real property described in the auditor's list. Section 3 gives the right to redeem the land at any time on or before June 1, 1898, by paying the face of the taxes without penalty or interest, and after June 1, 1898, and before sale, by paying the face of the taxes, and interest at the rate of ten per cent. per annum from June 1, 1898. Section 4 contains a provision for extending, for three years, the time to pay all such delinquent taxes upon paying interest thereon at six per cent. per annum in advance, and also paying the taxes which matured subsequent to those in the forfeited list, and sought to be extended. Section 5 enacts that the sale shall be absolute and without redemption, except where the only taxes delinquent are those for 1895, in which case redemption may be had within one year after the sale.

It seems to be admitted by all parties that this statute is original in every respect, and it follows that there are no adjudicated cases which directly refer to its provisions or similar ones. It is asserted by defendants' counsel to be repugnant to the fundamental law, because in several respects it is special legislation within the rules heretofore laid down by this court, because it makes the burden of taxation unequal, because it deprives the counties and their several municipalities of their property—assets in the shape of taxes— without due process of law, and, finally, because it deprives the

owner of the property of the right of redemption accorded him by the law in force when the tax sale was made. Other questions peculiar to the case at bar have been raised and argued by counsel, but we need not refer to them specially. They are unimportant, as we look at the 1897 statute.

The principal argument upon the constitutionality of the act has been directed to the claim that it is special legislation as to county affairs, and is not uniform throughout the state. It is strongly argued that the basis of classification adopted therein is in direct conflict with the rules therefor established in a number of cases involving a construction of the constitutional provisions prohibiting special legislation in all cases where general laws can be made applicable, such laws to be uniform in their operation throughout the state. Const. art. 4, §§ 33, 34. The subject now under consideration is, at best, a very perplexing one, and has been before this court a number of times since the adoption, in the year 1892, of the constitutional provisions before referred to. We need not review all of these decisions for the purpose of stating the general propositions, for they have been exceedingly well abridged and concisely stated in the recent case of Murray v. Board of Commrs., supra, page 361, thus:

"A law is general and uniform in its operation which operates equally upon all subjects within the class for which the rule is adopted, provided the classification be a proper one. The legislature, however, cannot adopt an arbitrary classification; for it must be based on some reason suggested by such a difference in the situation and circumstances of the subjects placed in different classes as to disclose the necessity or propriety of different legislation in respect thereto. Any law based upon such classification must embrace all, and exclude none, whose condition and wants render such legislation necessary or appropriate to them as a class. Legislation limited in its relation to particular subdivisions of the state, to be valid, must rest on some characteristic or peculiarity plainly distinguishing the places included from those excluded."

And another terse summary of the rules which are to govern when passing upon alleged special legislation is found in State v. Ritt, 76 Minn. 531, 534, 79 N. W. 535, in these words:

"First, that the basis of classification cannot be arbitrary or

illusive, but must be founded upon such a substantial distinction, having reference to the subject-matter of the legislation, between the objects or places embraced in the subject of the legislation and the objects or places excluded, as suggests the necessity or propriety of different legislation for the two in respect to the matter which is the subject of the legislation; second, that the act must include, and act uniformly upon, all of the class,—that is, all whose conditions and wants render such legislation equally appropriate to them as a class."

These rules are to be applied to the provisions of the particular law under consideration, and it is in their application to a great variety of these provisions that trouble arises. To determine whether the statutory classification is a proper one is more difficult than to decide whether the statute itself operates equally upon all subjects within the class for which it was adopted. The law now before us was designed to have effect in a part only of the eighty-two organized counties of the state, not in all. These specially selected counties were those in which real-estate taxes delinquent on the first Monday in January, 1897, and prior years, the collection of which remained enforceable, exceeded in amount thirty mills on the dollar of the assessed valuation of all real property in any one for the year 1896. The taxes affected by this law were those for 1895 and prior years levied against various tracts of land, which remained unpaid, had become delinquent, and where proceedings to enforce collection had resulted in forfeiture to the state, without subsequent redemption by the owners or assignments of certificates or sales to actual purchasers. If the delinquent and enforceable taxes against such tracts were at the time prescribed in excess of thirty per cent. of the total real-estate valuation of the county for the year 1896, the law was operative in that particular county; otherwise it was of no effect. In these subdivisions of the state the boards of county commissioners were to find and declare the fact by resolution, and then it became the duty of the county auditors to prepare lists, and to cause the same to be published, as the basis of proceedings which would terminate in judgments and sales, generally speaking, in accordance with the tax laws. The statute did not stop here in its friendliness and care for those who had neglected to meet and liquidate their share of the public bur-

den, as will be observed by an examination of sections 3, 4, and 5; but we need not specially refer to these sections.

In our opinion, the entire act may be disposed of, upon the first section, as repugnant to the before-mentioned constitutional provisions. The rules, as heretofore laid down, require that classification—in this case, of counties—must be founded upon such a substantial distinction, having reference to the subject-matter of the legislation between the places,—counties,—as suggests the necessity or propriety of different legislation for the two in respect to the subject-matter of the legislation; and also that the act must include and operate uniformly upon all of the class,—all whose conditions and wants render such legislation equally appropriate. To justify the distinction which has here been made between counties, there must have been some substantial inherent distinction between tracts of land situated in counties subject to the act and tracts of the same general character located in other counties. The objects upon which the law was intended to operate were the tracts of land. The owners thereof were to be affected and benefited without regard to residence. If tracts or parcels of land have been forfeited to the state for nonpayment of state, county, city, or town or school-district taxes, what substantial difference or distinction can be made between such forfeited lands, based solely upon county lines,—that is, by taking counties as the units of classification? What substantial difference or distinction can be pointed out and predicated solely upon the fact that in one county the percentage of the whole amount due is greater than in another, when compared with the total valuation of real property in that county?

The attempted classification was arbitrary, not founded upon any substantial different conditions, which would suggest or justify a distinction between counties, and none of the characteristics which were used to serve as a basis for classification were of such a nature as to mark the counties to which the operation of the act was confined as peculiarly requiring exclusive or distinctive legislation. It seems impossible to suggest any substantial reason why classification for statutory purposes should be based upon a comparison of the total sum due on account of forfeited lands in any one county with the whole valuation of the lands therein.

The argument of counsel for defendants is that counties which have the specified percentage of forfeited lands need special legislation in reference thereto, and that this fact suggests a practical propriety for different legislation in their interests. It is urged that the objects sought to be secured were—First, the relief of each affected county by the payment of money into the county treasury, and the transfer of lands from the unproductive class to the class which annually contributes to the revenue by the payment of taxes; and, second, to relieve the owners of the forfeited property.

In support of the first-mentioned object, it is urged that a county in which the delinquency is in excess of thirty mills on the dollar of assessed valuation needs the proposed relief very badly, while that in which the delinquency is a great deal less needs it not at all. But the money needs of a county do not depend upon the condition of the real property tax lists, or the percentage of forfeited lands, so much as they do upon the amount of its revenue, which is, in part, derived from the taxation of personal property, and, above all, its present needs. Or, to put it in another way, one county, with a very large list of forfeited lands, or with a large valuation in personalty, having no indebtedness to liquidate, is in no immediate need of cash, while its neighbor, without many parcels of forfeited lands, or with little taxable personal property, imperatively requires the prompt collection of every dollar possible.

The second of the objects of the enactment mentioned by counsel needs very little attention. If the interests of the landowners are to be considered at all, when legislating in reference to their forfeited lands, such interests are as great whether the lands are in one county or in another. They are not circumscribed by territorial limits. They are just as important as to the owner's land situated in the county of A. as they are to his land when situated in the county of B. Or, if the owner's possessions are all in one county, his interests are of as much consequence as those of another owner, whose property is in a different county. It is obvious that all counties, and all forfeited lands, and all landowners whose wants and conditions make such legislation necessary or appropriate to them as a class, are not embraced within the operation of

the act in question. As was said in the Murray case, there is no "characteristic or peculiarity plainly distinguishing the places included from those excluded" by the terms of this law; and, using an expression found in the opinion in that case, the assumed difference between counties in which the valuation of forfeited lands exceeds thirty mills on the dollar of the total real-estate valuation and those in which the percentage is less than thirty mills "is one of degree, not a distinguishing characteristic," upon which can be predicated a classification of counties.

As plaintiff's title wholly depends upon the validity of the statute of 1897, its certificate was of no value, and the judgment appealed from is reversed.