In the case of Munger v. Halden, infra, the premises sold at the tax sale for considerably less than the amount of accumulated taxes against it, and under such circumstances we doubted the application of the equitable rule of estoppel. In the present case, however, the premises were sold for more than double the amount of accumulated taxes, and it appears that both the tax and fee title under the sale have been merged in the respondent. Under such conditions, we can see no reason why the county should not be estopped from proceeding against the land for the same taxes, inasmuch as it has that amount, and more too, in its possession by virtue of the sale. While the doctrine applied in the other case controls here, we may also dispose of it upon the equitable principle which was not applied in that case.

Judgment affirmed.

------

ROGER S. MUNGER v. ODIN HALDEN.[1]

June 20, 1901.

Nos. 12,694—(188).

**Resale of Land for Same Taxes.**

Under Laws 1897, c. 290, certain premises were sold to a purchaser for one-tenth the amount of the accumulated taxes. That act having been adjudged unconstitutional by this court, and no refundment of the money paid at the sale having been made to the purchaser, as provided by Laws 1899, c. 93, *held,* that the sale was valid as between the county and the purchaser, and no authority exists for a resale of the premises for the

[1] Reported in 86 N. W. 617.

same taxes, under the provisions of Laws 1901, c. 339. Whether or not, under such circumstances, the county is estopped from reselling the premises for the same taxes, while retaining the money received at such sale, quære.

Action in the district court for St. Louis county to restrain dedendant, as county auditor of said county, from proceeding under Laws 1901, c. 339, to advertise and sell for taxes land owned by plaintiff, which had been sold previously to an actual purchaser to satisfy the same taxes, under Laws 1897, c. 290. No redemption was made from the previous sale, which was for less than the amount of taxes due, and the proceeds of such sale were retained by the county. Defendant justified on the ground that Laws 1897, c. 290, having been held unconstitutional the sale made thereunder was void. The case was tried before Wm. B. Phelps, Esq., referee, upon whose report judgment was entered perpetually restraining defendant from further proceeding in the premises. Defendant appealed from the judgment. Affirmed.

*W. G. Crosby,* Assistant County Attorney, St. Louis County, for appellant.

*J. W. Reynolds,* for respondent.

LEWIS, J.

At the tax sale of May 16, 1899, the premises in question were sold, under the forfeited tax law of 1897, to one S. L. Pierce for the sum of $2.40. The premises had been sold for the taxes of 1893 and 1895, and had been bid in by the state, and the amount of taxes accumulated against the property at the time it was sold under the 1897 law was $20.85. The present action is brought by the owner, the respondent herein, to enjoin the county auditor from proceeding to sell the premises for the taxes of 1895 and prior years, at the tax sale to be held on June 24, 1901, under the provisions of Laws 1901, c. 339. The relief is sought upon two separate causes of action—First, as owner of the property; and, second, as a citizen and taxpayer of the county, claiming that the sale was not justified, and would incur an unwarranted expense to the county of more than $2,000. Judgment was entered in the court below restraining and perpetually enjoining the county

auditor from advertising and selling the premises at the afore-mentioned sale.

The short time allowed between the presentation of this case to the court and the date of the sale makes an early decision neces-sary, and for that reason it will be impossible to enter into as full a discussion of the principles involved as the importance of the case would seem to warrant. The question before us is the effect of the sale made under the 1897 law, as between the pur-chaser at the sale and the county, such law having been declared by this court to be unconstitutional. In the case of Duluth Bank-ing Co. v. Koon, 81 Minn. 486, 84 N. W. 335, it was held that the act was unconstitutional on the ground that it was class legislation, and it was directly held in that case that a sale under that law conferred no title to the premises sold to the purchaser thereof. In the case under consideration the state insists that, because it was held in that case that the purchaser of the property at the tax sale acquired no title as between himself and the original fee owner, the same principle applies in the present case, and that the sale, and every step connected therewith, was absolutely void. In other words, that, if the act was unconstitutional, it was un-constitutional and void in all respects, and therefore that the sale of May 16, 1899, having been invalid, the state has the right to proceed again, and resell the property for the same taxes. Upon the other hand, respondent takes the position that although the act in question has been declared unconstitutional, and that a sale thereunder did not confer a valid title to a purchaser, yet the county, having recognized the act as constitutional and valid for the purpose of collecting its taxes, is estopped from selling the property again, because under the general principles of equity, the party who proceeds to treat a law as valid, and acts upon it, will not be heard to plead its invalidity, and at the same time retain any part of the benefit which accrued thereunder.

In the case of State v. Mitchell, 31 Oh. St. 592, it was held that an act to provide for the improvement of streets and avenues was unconstitutional, but that the land-owners who caused the street to be improved under the provisions of the act were estopped from denying the validity of the assessment made

in accordance therewith. The principle applied was that, having voluntarily availed themselves of the provisions of the act to create an indebtedness for the benefit of their property, good faith required they should be thus estopped. In the case of Ferguson v. Landram, 5 Bush, 230, certain citizens of a county were instrumental in securing the passage of a law which provided for the bonding of the county for the purpose of paying bounty to volunteers. It was held that, although the act was unconstitutional, the parties thus participating were estopped from denying its validity, and were liable for the tax levied for such purpose. In the case of Philadelphia v. Ridge Ave., 142 Pa. St. 484, 21 Atl. 982, it was held that the city of Philadelphia, which had demanded and received taxes for several years under an unconstitutional act, was estopped from claiming additional taxes for those years, on the theory that the act was unconstitutional. In our own court, in the case of William Deering & Co. v. Peterson, 75 Minn. 118, 77 N. W. 568, this principle was recognized and applied to the beneficiaries of a seed-grain loan under an unconstitutional statute.

We are not satisfied, from the authorities cited, and others of similar import, which we have examined in this connection, to extend the doctrine in the present case where the amount received was less than the amount of the tax. The rule applied in cases cited is no doubt sound with reference to the particular facts presented in those cases; but, strictly speaking, the county, under the circumstances presented in this case, occupies a somewhat different relation, not having received the full amount. However, underlying those authorities is the broad equitable principle that neither a private party nor a public corporation will be permitted to take advantage of a law for the purpose of enforcing obligations against those with whom it deals, and then retain the benefits of such procedure, and deny the validity of the law, and rescind its action.

While we are not content to rest this decision strictly upon this legal proposition, yet it must be taken into account in considering the attitude of the legislature when it enacted Laws 1899, c. 93. This law was approved March 23, 1899. The forfeited law

of 1897 had been upon the statute books two years. The sale under that law was to take place on May 16, 1899. It was a matter of notoriety that it was to be an absolute sale; that the property was to be sold for what it would bring, without any right of redemption; that there was grave doubt as to its constitutionality. Under such circumstances, chapter 93 was enacted. This chapter has special reference to the law of 1897. It provides for a refundment of the money to the purchaser when any tax sale or tax certificate shall be declared void by the judgment of a court. It also provides that the holder of a certificate, who is not in possession, may surrender the same and receive back his money from the county; and, further, that, where the amount paid by any purchaser or holder of any certificate is refunded under the provisions of this act, such refundment shall not be construed as a payment or cancellation of any tax included in the judgment or refundment, but the same shall stand as originally extended against the property, and accruing penalties, interest, and costs, be included with the tax in the next application for judgment, when the judgment rendered under chapter 290 shall be declared void.

In our opinion, the legislature, anticipating the difficulties that might arise under the sale about to accrue under the law of 1897, and recognizing the obligations that might arise to the parties purchasing property at such sale and paying money into the treasury, by this chapter undertook to provide a means for the adjustment of such obligations, and defined the status of the state and county with reference thereto. The act provides a method of refundment to purchasers within two years from the date of the sale. If the purchaser appear and make the necessary application at any time within two years, his money must be refunded, and in such case the sale would be nullified, and the tax included in the judgment or refundment should stand and be as originally extended against the property.

From this we think it was the intention of the legislature that, in those cases where no refundment was made, the county would be bound by the sales; that the refundment was provided for the benefit of the purchaser, and gave him the option of applying for

his money, in which case the county was compelled to surrender the money, and consider the sale annulled, and proceed to collect the tax at a subsequent sale. But, if the purchaser did not see fit to exercise the option within the two years, then, so far as the county was concerned, the sale was to be considered binding and final. It was not the intention of the legislature to provide that the county should retain the money which it received at the sale, and at the same time proceed to resell the property for the same taxes.

In the present case the two years within which the purchaser could apply for refundment had expired, and the purchaser was not in possession. The state assumes that, because the purchaser did not make such application for refundment, whatever money remained in the treasury from the sale of the premises was so much gain. But we do not believe that such was the intention of the legislature. Construing the act in accordance with the equitable principles above discussed, it is more in accordance with reason and fair justice to assume that the legislature had the contrary intention, and that it was not its purpose to take advantage of an invalid sale, and retain money in its treasury which had been paid in good faith, relying upon the validity of the procedure.

It is unnecessary to discuss the question whether or not the lands sold under the act of 1897, as in this case, were embraced within the provisions of Laws 1901, c. 339. We shall assume that that chapter was intended to include all lands belonging to the state. As we have construed the act of 1899, of the property sold at the sale of May 16, 1899, only those lands could be resold under the act of 1901 which had been restored to the state by reason of a refundment of money to the purchaser, and the consequent annulment of that sale.

It follows that the county auditor has no authority to proceed with the advertisement and sale of the premises in question, and the judgment of the lower court is affirmed.