(No. 18510.—Reversed and remanded.)
THE CHICAGO MOTOR CLUB, Appellant, *vs.* GARRETT KIN-
NEY, State Treasurer, *et al.* Appellees.

*Opinion filed February 24, 1928.*

1. MOTOR VEHICLES—*tax on distribution of motor fuel is an ex-
cise tax.* The tax imposed by the act of 1927 on the distribution
of motor fuel is an excise or occupation tax imposed upon dis-
tributors of motor fuels as defined in the act, in order to raise
revenue for the purposes mentioned.

2. CONSTITUTIONAL LAW—*sections 6 and 7 of act of 1927 impos-
ing tax on motor fuel violate constitutional provision as to amend-
ments.* Section 6 of the act of 1927 imposing a tax on motor fuel,
in authorizing payment from the State road fund for other pur-
poses than those mentioned in the Motor Vehicle act, violates sec-
tion 13 of article 4 of the constitution, as it amends the Motor
Vehicle act without being complete in itself as to the distribution
of said fund; and section 7 of the Motor Fuel Tax act violates
the same constitutional provision, as it amends by reference, only,
section 15*d* of article 4 of the Roads and Bridges act, as to what
use counties may make of appropriations from the State road fund.

3. SAME—*section 10 of Motor Fuel Tax act is invalid.* Sec-
tion 10 of the Motor Fuel Tax act, authorizing a refund of two
cents a gallon where the fuel is used for purposes other than oper-
ating a motor vehicle on the public highways, may, in its operation,
violate the constitutional provision against appropriating or loan-
ing public funds for private purposes as the refund is not required
to be paid to the person paying the tax, and section 5 authorizes
the distributor paying the tax to deduct three per cent for evapo-
ration and other loss, which makes possible a refund to a dis-
tributor of more than the amount of the tax paid in by him.

4. SAME—*entire Motor Fuel Tax act is invalid.* As sections 6,
7 and 10 of the Motor Fuel Tax act violate constitutional provi-
sions, and as it cannot be presumed that the legislature would have
passed the act without said provisions, the entire act is invalid.

5. STATUTES—*when a statute is valid although it amends prior
act.* Where a law is complete in itself and entirely intelligible
without reference to prior legislation it is valid although incident-
ally its effect is to modify or repeal existing law, but the fact that
the title indicates that the act is complete and independent does
not save it, if it be, in fact, amendatory of other acts.

6. SAME—*when provision of prior act may be incorporated in
new act by reference.* It is permissible to incorporate by reference

into a new act provisions of other acts which are germane to the subject expressed in the title of the new act, but matter cannot be included in the act by reference which could not have been included directly if the matter inserted leaves the law incomplete.

7. SAME—*when invalid portion renders entire act void.* Where the different objects of an act are so dependent upon or so mutually connected with each other in meaning, or as conditions, considerations or compensations for each other, that it cannot be presumed the legislature would have enacted the provisions designed to secure one of the objects without the provisions for the other, the invalidity of the latter renders the whole act void.

8. TAXES—*taxes can be levied for public purposes, only.* Taxes can be levied for public purposes, only, and public funds cannot be appropriated to any private purpose, as it is a violation of due process of law to take a citizen's money from him under the guise of taxes for any other than a public purpose.

APPEAL from the Circuit Court of Kane county; the Hons. JOHN K. NEWHALL and WILLIAM J. FULTON, Judges, presiding.

MILLER, GORHAM, WALES & NOXON, JOSEPH H. BRAUN, and ELLIS & WESTERN, for appellant.

OSCAR E. CARLSTROM, Attorney General, MONTGOMERY S. WINNING, and S. S. DUHAMEL, for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This appeal is from a decree of the circuit court of Kane county sustaining a general demurrer to and dismissing for want of equity an amended bill for injunction filed by the Chicago Motor Club, a corporation, as a tax-payer seeking to enjoin appellee A. C. Bollinger, as director of the Department of Finance, from collecting the tax imposed by the act entitled, "An act to impose a license tax on the sale and use of motor fuel," approved June 29, 1927, and appellees Garrett Kinney as Treasurer, Oscar Nelson as Auditor and Bollinger as director, from disbursing, using or expending

any of the funds appropriated by the act entitled, "An act making appropriations to the Department of Finance to carry out the provisions of 'An act to impose a license tax on the sale and use of motor fuel,'" approved on the same day.

Section 1 of the act imposing the tax defines motor fuel as "all volatile and inflammable liquids produced or compounded for the purpose of, or which are suitable and practicable for operating motor vehicles," excepting kerosene, and defines a distributor as "a person who for sale or use in this State either imports into this State or produces, refines, compounds or manufactures in this State motor fuel." Section 2 provides for the licensing of distributors. Section 3 requires those acting as distributors on the first day of August, 1927, to file an inventory of motor fuel on hand. Section 4 requires those acting as distributors after July 31, 1927, to report to the Department of Finance on or before the 20th day of each calendar month the amount of motor fuel purchased, imported, produced, refined, compounded, manufactured, received, sold, distributed or used by them during the preceding calendar month and the amount on hand at the close of business for such month. Section 5 reads: "At the time of making the monthly return, the licensee shall pay as a license tax to the Department of Finance, two cents for each gallon of motor fuel sold or used by him during the period covered by the return. In making the computation of tax due, three per cent shall be deducted from the total amount of motor fuel sold or used by the licensee as an allowance for evaporation and other loss. * * * All money received by the department as license taxes under this act shall be deposited in the special fund in the State treasury known as the Road fund." Section 6 reads: "After deducting the expense of administering this act, and the refunds provided for in section 10, from the total amounts of license taxes collected in each calendar year, the Department of Finance shall apportion,

as hereinafter provided, to the several counties of the State, as soon as may be after the end of the calendar year, fifty per cent of the net amount collected in 1927, and in each succeeding year. The money shall be apportioned to the several counties in each year, in proportion to the amount of motor vehicle license fees received from the residents of each county in the State, during the preceding calendar year." Section 7 reads: "Money apportioned to the several counties shall be used only for one or both of the following purposes, as the particular county may desire: 1. In case a county has outstanding bonds issued, or obligations incurred for the purpose of constructing State-aid roads, such construction having been or to be in accordance with section 15*d* of article 4 of 'An act to revise the law in relation to roads and bridges,' approved June 22, 1913, as amended, such money or any part thereof may, by resolution of the county board be used for the purpose of retiring such bonds and paying such obligations. 2. Any county may also use any money apportioned to it, in the construction of State-aid roads, in the manner provided for the use of county funds for such work by section 15*d* of article 4 of 'An act to revise the law in relation to roads and bridges,' approved June 27, 1913, as amended. However, no refund or further contribution shall be made by the State for such construction, nor shall the county in order to use the money apportioned to it, be required to provide or appropriate any county funds for such construction. * * * So far as practicable, priority in the matter of construction with these funds in any county, shall be given State-aid roads which will connect with the State bond-issue routes numbered 1 to 185, inclusive, those incorporated municipalities which are not now upon any of these routes. All highways so constructed shall be maintained in accordance with article 4 of said act." Section 8 makes provision for collecting the tax on the first transfer after motor fuel which is imported into the State loses the character of an inter-State ship-

ment. Section 9 requires every licensed distributor to keep records and makes these records subject to inspection by the Department of Finance. Section 10 reads: "Any person who uses motor fuel (upon which the license tax imposed by this act has been paid) for any purpose other than operating a motor vehicle upon the public highways of this State, shall be reimbursed and re-paid two cents on each gallon of motor fuel so used. Claims for such reimbursement shall be made to the Department of Finance duly verified by the affidavit of the claimant, * * * upon forms prescribed by the department. The claim shall state such facts relating to the purchase, importation, manufacture or production of the motor fuel by the claimant as the department may deem necessary and the time when and the specific purpose for which it was used. * * * The department may make such investigation of the correctness of the facts stated in such claims as it deems necessary. When the department has approved such claims, it shall pay to the claimant the reimbursement herein provided out of any moneys appropriated to it for that purpose." Section 11 gives the Department of Finance authority to make reasonable rules and regulations relating to the administration and enforcement of the provisions of the act, and section 12 fixes penalties for persons failing or refusing to comply with the act. Section 13 gives the Department of Finance the right to revoke the license of a distributor for violations and the right to apply to a court of equity for an injunction to restrain the operations of distributors who refuse to comply with the act. Section 14 reads: "It is the purpose of this act to impose a license tax once upon either the sale or use of each gallon of motor fuel sold, or used within the State for the purpose of operating motor vehicles upon the public highways, so far as the same may be done under the constitution and statutes of the United States and the constitution of the State of Illinois." (Smith's Stat. 1927, p. 2334.)

It is clear that the tax levied by this act is an excise. (*Bowman* v. *Continental Oil Co.* 256 U. S. 642, 41 Sup. Ct. 606; *Foster & Creighton Co.* v. *Graham,* 285 S. W. (Tenn.) 570, 47 A. L. R. 971; *Gafill* v. *Bracken,* 195 Ind. 551, 145 N. E. 312; *State* v. *Hart,* 125 Wash. 520, 217 Pac. 45; *Altitude Oil Co.* v. *People,* 70 Col. 452, 202 Pac. 180.) It is an occupation tax imposed upon distributors of motor fuels as defined in the act. It is a charge on the business of distributing motor fuel imposed for the purpose of raising revenue for the purposes mentioned in the act and measured by the number of gallons of motor fuel sold or used. In exercising its power to tax a business the legislature is specifically required by section 1 of article 9 of our State constitution to tax "by general law, uniform as to the class upon which it operates," and under both the National and State constitutions it is specifically prohibited from passing any law which will deprive any person of his property without due process of law. Section 13 of article 4 of our State constitution provides: "No act hereafter passed shall embrace more than one subject, and that shall be expressed in the title," and "no law shall be revived or amended by reference to its title only, but the law revived, or the section amended, shall be inserted at length in the new act." Section 20 of article 4 provides that the State shall never in any manner give, loan or extend its credit to or in aid of any corporation, association or individual. By its amended bill appellant invokes these provisions of the National and State constitutions in its attack upon the constitutionality of the law imposing the tax in question and makes seven specific charges against the validity of the act.

The first point which we shall notice is that challenging the validity of the act on the ground that section 6 amounts to an amendment of section 36 of the Motor Vehicle act. Said section 36 provides: "All moneys received by the Secretary of State as registration fees and for the examination and licensing of chauffeurs, as provided in this act,

shall be deposited in the State treasury and set apart as a special fund to be known as the Road Fund. The Road fund shall, if and when the State of Illinois shall incur any bonded indebtedness for the construction of permanent highways, be set aside, and used for the purpose of paying and discharging annually the principal and interest on such bonded indebtedness then due and payable, and for no other purpose, and the surplus, if any after the payment of the principal and interest on such bonded indebtedness then annually due, shall be used for the improvement of the highways of the State in accordance with the provisions of article 4 of an act entitled, 'An act to revise the law in relation to roads and bridges,' approved June 27, 1913, in force July 1, 1913, or in accordance with the provisions of the Federal Aid Road act, or both of such acts, and all acts amendatory thereof, or for the construction and maintenance of durable, hard-surfaced roads along and upon the routes designated in 'An act in relation to the construction by the State of Illinois of a State-wide system of durable, hard-surfaced roads upon public highways of the State and the provision of means for the payment of the cost thereof by an issue of bonds of the State of Illinois,' approved June 22, 1917, in force July 1, 1917, or for all of said purposes." (Smith's Stat. 1927, p. 2396.) Section 6 of the act before us directs the Department of Finance to pay the expenses of administering the act and make the refunds provided for in section 10 and then to apportion to the counties of the State one-half of the net amount of tax on motor fuels collected each year. Section 5 directs the Department of Finance to deposit in the special fund in the State treasury known as the Road fund all the money received as taxes on motor fuels. When collected this money is mingled with the funds already on deposit in the Road fund and becomes a part of it. The Motor Vehicle act prohibits the use of moneys deposited in the Road fund for any purpose other than payment of principal and interest on State highway

road bonds and the improvement or aiding in the improvement of the highways of the State, while the Motor Fuel Tax act authorizes payment from the Road fund of the expenses of administering said act and of so-called refunds to certain users of motor fuel. That this is the true interpretation of the act is shown by the Appropriation act passed at the same session of the legislature and approved on the same day, which reads: "There is appropriated to the Department of Finance from the Road fund in the State treasury, the following named sums or so much thereof as may be necessary, to be used in carrying out the provisions of an act of the Fifty-fifth General Assembly, entitled, 'An act to impose a license tax on the sale and use of motor fuel,' until the expiration of the first fiscal quarter after the adjournment of the next regular session of the General Assembly: For distribution to the several counties of the State in accordance with the provisions of sections 6 and 7 of said act, $9,200,000; for a reimbursement of two cents per gallon to persons who have used motor fuel upon which the license tax was paid, for purposes other than operating a motor vehicle upon the public highways of this State, $1,840,000; for the expense of administering said act, $50,-000." (Laws of 1927, p. 44.) Under the Motor Vehicle act the disbursing officers of the State are told to use all of the Road fund for the construction and improvement of the highways of the State, whereas under the Motor Fuel Tax act they are authorized to use the same fund for other purposes. Such officers cannot determine their duties in this respect by reading either act alone. The provisions of the two acts are intermingled and the officers must take both as their guide. This is exactly the kind of legislation which is condemned by the people of this State in their fundamental law. *Board of Education* v. *Haworth,* 274 Ill. 538; *Galpin* v. *City of Chicago,* 269 id. 27; *Badenoch* v. *City of Chicago,* 222 id. 71; *People* v. *Board of Election Comrs.* 221 id. 9.

It is next contended that section 7 of the act before us is an attempt to amend section 15*d* of the Roads and Bridges act and then incorporate it as amended into the Motor Fuel Tax act. Said section 7 provides that any county may use the money apportioned to it "in the construction of State-aid roads, in the manner provided for the use of county funds for such work by section 15*d* of article 4 of 'An act to revise the law in relation to roads and bridges,' approved June 27, 1913, as amended. However, no refund or further contribution shall be made by the State for such construction, nor shall the county in order to use the money apportioned to it, be required to provide or appropriate any county funds for such construction." Article 4 of the Roads and Bridges act is that division of the act which deals with the construction of highways in the State at the joint expense of the State and the several counties. Said section 15*d* provides that any county which desires to improve a road theretofore designated as a State-aid road earlier than its allotment from the State treasury of State-aid road money will permit, may advance out of county funds available, or which may become available from any source for such purpose, the entire cost of improving such State-aid road and may make such improvement at any time, and may use any subsequent allotment of State-aid road money made to it by the State Highway Commission to reimburse itself to the extent of one-half of the cost of improving such road. (Smith's Stat. 1927, p. 2344.) Reading section 7 of the Motor Fuel Tax act and section 15*d* of the Roads and Bridges act together, we have a law which reads, in effect, as follows: "Any county desiring to improve one of the highways of the county, theretofore designated as a State-aid road, sooner than funds allotted to it for State-aid roads from sources other than its apportionment of motor fuel taxes are available, may use the money apportioned under the Motor Fuel Tax act for the improvement of such State-aid road, but such

county shall not use any funds thereafter allotted to it from the State treasury for State-aid road purposes to reimburse itself for one-half of the cost of improving such State-aid road." The mere incorporation of section 15*d* of the Roads and Bridges act into section 7 of the Motor Fuel Tax act would not make an intelligible piece of legislation without judicial interpretation. No one could tell from reading such a piece of legislation whether the money apportioned to the several counties was a State fund to be expended in the several counties or a county fund. The county officers charged with the improvement of the highways of the county would find themselves with an allotment of money from the State for the construction of State-aid roads which they would be authorized to use for the construction of State-aid roads if they desired to build such roads with county funds more rapidly than allotments of State-aid road moneys would permit. This is an irreconcilable contradiction. What was undoubtedly intended to be said by the legislature is, that counties may use the funds apportioned to them from motor fuel tax moneys for the purpose of improving within the counties roads theretofore designated as State-aid roads, the term "State-aid roads" being used merely as a means of identifying the highways which might be improved from such fund, but this is not what has been said by the intermingling of new and old legislation. Under the authorities cited in the preceding paragraph, section 7 under consideration contravenes section 13 of article 4 of the constitution. Where the new law is complete in itself and entirely intelligible without reference to prior legislation it is valid, though incidentally its effect is to modify or repeal existing law. (*State* v. *Milauskas,* 318 Ill. 198; *Hollingsworth* v. *Chicago and Carterville Coal Co.* 243 id. 98; *People* v. *McBride,* 234 id. 146; *Timm* v. *Harrison,* 109 id. 593.) The fact, however, that the title indicates that the act is complete and independent does not save it, if it be, in fact, amendatory of

329—9

other acts. (*Brooks* v. *Hatch,* 261 Ill. 179; *O'Connell* v. *McClenathan,* 248 id. 350.) It is permissible to incorporate by reference into a new act provisions of other acts which are germane to the subject expressed in the title of the new act, (*Hagler* v. *Small,* 307 Ill. 460; *Evans* v. *Illinois Surety Co.* 298 id. 101; *People* v. *Crossley,* 261 id. 78;) but matter cannot be included in the act by reference which could not have been included directly.

We come now to the consideration of the validity of section 10 of the Motor Fuel Tax act, which is challenged on the ground that it makes a gift of public funds to "any person who uses motor fuel (upon which the license tax imposed by this act has been paid) for any purpose other than operating a motor vehicle upon the public highways of this State." It is elementary that taxes can be levied for public purposes only, (1 Cooley on Taxation,—4th ed.— sec. 174; *Citizens' Savings and Loan Ass'n* v. *Topeka,* 20 Wall. 655, 22 Law ed. 455; *Lowell* v. *City of Boston,* 111 Mass. 454, 15 Am. Rep. 39;) and that public funds can not be appropriated to any private purpose. (*Washingtonian Home* v. *City of Chicago,* 157 Ill. 414; *Deering & Co.* v. *Peterson,* 75 Minn. 118, 77 N. W. 568.) It is a violation of the due process of law clause of the National and State constitutions to take a citizen's money from him under the guise of taxes for any other than a public purpose. (*Robbins* v. *Kadyk,* 312 Ill. 290; *Green* v. *Frazier,* 253 U. S. 233, 40 Sup. Ct. 499; *State* v. *Wade,* 59 N. J. L. 78, 35 Atl. 4.) There can be no question about the law on this subject, but it is not always easy to draw the line in all cases so as to decide what is a public purpose and what is not. Section 10 of the act in question requires the Department of Finance to pay to any person who uses motor fuel for any other purpose than operating a motor vehicle upon the highways of the State and upon which the license tax imposed by the act has been paid, two cents on each gallon of motor fuel so used, without regard to whether such per-

son has paid the tax himself and without regard to whether he has paid into the State treasury, directly or indirectly, a sum equal to two cents on each gallon of motor fuel so used by him. · If this be the effect of section 10 then it clearly contravenes section 20 of article 4 and section 2 of article 2 of our State constitution and the fourteenth amendment to the National constitution.

The act under consideration does not purport to levy a tax upon the consumer of motor fuels. It does not require the person who uses motor fuel for the purpose of operating a motor vehicle upon the highways of this State to pay a tax of two cents on each gallon of motor fuel so used nor does it require the distributor of such motor fuel to collect such a tax. The tax is levied against "a person who for sale or use in this State either imports into this State or produces, refines, compounds, or manufactures in this State motor fuel." The only person entitled to a refund under section 10 who is required by the act to pay the tax is one who imports motor fuel into this State or who produces, refines, compounds or manufactures motor fuel in this State. Such a person is not required to pay a tax of two cents for each gallon of motor fuel sold or used by him, but he is required by section 5 to pay such a tax on the amount of motor fuel so sold or used less three per cent of the amount. To illustrate: If a contractor engaged in the building of hard-surfaced roads in this State requires a large quantity of gasoline to be used in the operation of his trucks, tractors and other motors, and imports into this State a tank-car of gasoline containing 10,000 gallons and uses the same for purposes other than the operation of a motor vehicle upon the public highways of the State, he would be entitled to a refund of $200 from the State under section 10 but he would have paid into the State treasury only $194. Thus he would receive from the State treasury for his private use and benefit $6 which he had not paid into the treasury. The business of marketing gas-

oline is a highly competitive business and those engaged in
it sell the same grade and quality of gasoline at different
prices. The cost of production of gasoline varies so widely
because of differences in the cost of drilling oil wells, quan-
tity and quality of oil produced by a well, cost of refining,
conveniences of transportation, methods of business, and
other conditions and items of cost too numerous to men-
tion, that it does not control the price to the consumer.
Into the cost of gasoline to the distributor, as defined in
the act, must enter items of labor, transportation, taxes of
every character, and many other items, and he must sell
this gasoline in competition on the open market. Because
of local conditions he may sell the same grade of gasoline
in one community for one price and in another community
for another price. A distributor in Illinois may absorb all
of the tax imposed by the Motor Fuel Tax act in one in-
stance and a portion of it in another, and in still another
instance he may pass on to the ultimate consumer the en-
tire cost of this item. The proprietor of a garage, filling
station or curb pump who actually fills the fuel tank of the
motor vehicle is not required to pay the tax of two cents a
gallon on all fuel sold by him unless he is also an importer,
producer, refiner or manufacturer of motor fuel, nor is he
either required or authorized to collect from the consumer,
as such, a tax of two cents a gallon on motor fuel to be
used for any purpose. If he be a distributor within the
meaning of the act he may or may not add to the price of
gasoline sold by him the two cents which he has paid to the
State, the same as he may or may not pass on to the same
consumer the amount of tax he paid on his real or personal
property used in the business. In short, the tax imposed
by the Motor Fuel Tax act is merely one of the items of
cost to the distributor and it enters into the cost to the ulti-
mate consumer just as any other item does. Therefore, if
a consumer purchases his gasoline at a point in the State
where competition is keen and the motor fuel tax is ab-

sorbed in whole or in part by the distributor or one or more of the dealers between the distributor and the ultimate consumer, and then receives from the State, in the nature of a refund, a payment of two cents on each gallon of motor fuel used by him for a purpose other than operating a motor vehicle upon the highways of the State, he has received a gift from the public treasury in violation of section 20 of article 4 of our State constitution, and the distributor taxed for the purpose of raising the fund to provide this gift to the consumer has been deprived of his property without due process of law, in violation of the National and State constitutions.

Forty-seven States now have laws which impose a tax upon distributors of motor fuel and there are forty-seven varieties of law on the subject. None of these laws is like ours. In some of the States the validity of the law has been challenged, but the decisions in those States are of little aid in the construction of our law. In New Mexico, South Carolina, Tennessee and Texas no exemptions from the tax are allowed, and in Arkansas, Arizona and Florida the exemption is made by the distributor at the time of sale. In Indiana the act specifically provides that the tax "shall be collected by the dealer selling gasoline to purchasers for purposes other than re-sale, and shall be paid by the purchaser to the dealer and by such dealer to the Auditor of State," and that any person who uses gasoline for purposes other than operating a motor vehicle upon the highways of the State "shall be reimbursed and re-paid the amount of such license fee paid by him." In South Dakota the act does not specifically provide that the tax shall be collected from the ultimate consumer, but it does provide that the refund to the consumer of motor fuels exempted from the provisions of the act shall be "the amount of such tax paid by him." In California the user of motor fuel exempted by the act, "who shall have paid any license tax for such motor vehicle fuel hereby required to be paid,

either directly to the vendor from whom it was purchased, or indirectly by the adding of the amount of such tax to the price of such fuel, shall be reimbursed and re-paid the amount of such tax paid by him or it," and it limits the amount to be paid to "an amount equal to the license taxes collected hereunder on the motor vehicle fuel so purchased or so used." Our attention has been called to no act which authorizes the payment from the State treasury to any person of an amount equal to two cents on each gallon of motor fuel used for purposes other than operating a motor vehicle upon the public highways of the State, where the act does not require such person to show that he has actually paid into the State treasury a similar amount.

Eliminating from the act the void sections 6, 7 and 10, we have an act which imposes a tax upon all distributors of all fuels suitable and practicable for operating motor vehicles, excepting kerosene, and places all of the fund thereby created in the special fund in the State treasury known as the Road fund. No user of gasoline or other fuel suitable and practicable for operating motor vehicles would be exempted and none of the fund would be apportioned to the several counties of the State. Such an act is not the act that was passed by the General Assembly, and it is evident that the act would not have been passed without sections 6 and 10. Where the different objects of an act are so dependent upon or so mutually connected with each other in meaning or as conditions, considerations or compensations for each other that it cannot be presumed the legislature would have enacted the provisions designed to secure one of the objects without the provisions for the other, the invalidity of the latter renders the whole act void. *People v. Martin,* 178 Ill. 611; *Springfield Gas and Electric Co. v. City of Springfield,* 292 id. 236; *Connolly v. Union Sewer Pipe Co.* 184 U. S. 540, 22 Sup. Ct. 431; Cooley on Const. Lim. (7th ed.) p. 246.

Fully mindful of the rule requiring all presumptions to be resolved in favor of the constitutionality of legislation and of the inconvenience caused by declaring this legislation invalid, we are compelled to hold that it contravenes both the National and the State constitutions and is therefore void.

The decree of the circuit court is reversed and the cause is remanded, with directions to overrule the demurrer to the bill and to enter a decree in accordance with its prayer.

*Reversed and remanded, with directions.*   ·