(Nos. 31752-31753.—

THE CITY OF CHICAGO HEIGHTS, Appellant, *vs.* PUBLIC SERVICE COMPANY OF NORTHERN ILLINOIS, Appellee.— Same Appellant, *vs.* ILLINOIS BELL TELEPHONE COMPANY, Appellee.

*Opinion filed March 22, 1951.*

Russell & Bridewell, of Chicago, and Joseph J. Mc-Grane, Corporation Counsel, of Chicago Heights, (David A. Bridewell, John A. Cook, Horace Russell, and Maurino R. Richton, of counsel,) for appellant.

Mitchell, Conway & Bane, of Chicago, (Stephen A. Mitchell, Charles A. Bane, and Thomas J. Russell, of counsel,) for appellee Public Service Company of Northern Illinois; Sidley, Austin, Burgess & Smith, of Chicago, (Kenneth F. Burgess, George A. Ranney, Jr., and Henry A. Preston, of counsel,) for appellee Illinois Bell Telephone Company.

Per Curiam : By separate actions brought in the superior court of Cook County, the plaintiff, the city of Chicago Heights, sought an accounting from the defendants, Public Service Company of Northern Illinois and Illinois Bell Telephone Company, of the amounts due and owing to it under an ordinance of October 3, 1949, regulating the condition,

location and construction of poles, wires and mains in streets and other public places and establishing license fees and penalties. Motions to strike the complaints were made and granted, and, in each case, a decree was entered dismissing the action. The trial judge has certified that the validity of a municipal ordinance is involved and that the public interest requires that the appeals be taken directly to this court. These appeals by the city followed. For the purposes of a hearing, the causes have been consolidated.

This is the third time within the past year that the city has prosecuted an appeal involving the constitutionality of ordinances relating to public utilities and providing for the payment of license fees or compensation. The first case, *City of Chicago Heights* v. *Western Union Telegraph Co.* 406 Ill. 428, a consolidated appeal, involved a delayed attempt by the city to enforce a 1919 ordinance requiring all persons and corporations installing or maintaining telephone, telegraph and electric power poles and wires in the streets to file an annual statement as to the number and location of all poles and wires and imposing a license fee of five dollars for each new pole erected, in addition to annual fees of one dollar per pole and $2\frac{1}{2}$ cents per wire for each street crossed. This ordinance was unconstitutional for the reason that it contained no regulatory provisions and therefore amounted to a revenue measure which the city had no power to enact and, also, because the fees imposed were excessive and unreasonable as a matter of law. In November, 1948, and February, 1949, the city enacted ordinances relating, respectively, to gas mains and to telephone, telegraph and electric power poles and overhead wires, and providing for the payment by public utilities of an annual fee of four per cent of their gross receipts as compensation for the use of the streets. Decrees holding both of these ordinances unconstitutional were affirmed in *City of Chicago Heights* v. *Public Service Company of Northern Illinois, ante,* p. 310, upon authority

of *Village of Lombard* v. *Illinois Bell Telephone Co.* 405
Ill. 209.

The ordinance of October 3, 1949, seeks to cure the
defects of the 1919 ordinance by incorporating certain regu-
latory provisions. Section 1 provides that no person or
corporation shall maintain any pole, wire or main in any
street or other public place except with the consent of the
city council after obtaining and paying for the requisite
license. Section 2 relates to annual licenses for the mainte-
nance of poles, wires and mains. Licenses shall be obtained
from the superintendent of streets and their issuance is con-
ditioned upon certain findings to be made by both the com-
missioner and the superintendent of streets. Other para-
graphs of the same section charge the commissioner and
superintendent with the responsibility of making monthly
inspections of poles, wires and mains and authorize these
officials to issue orders to remedy unsafe and unsound con-
ditions. Section 3 ordains that no new installation or
excavation may be made without a permit from the city
council. Application for permits must first be approved by
the commissioner and the superintendent of streets, their
determination to be based upon certain findings. Under
section 3, an indemnity bond in the sum of $15,000 and
a cash deposit are required for new installations. Provi-
sion is also made for barricades and lights, temporary side-
walks, the manner of making installation and excavations,
the restoration of ground or road surfaces and supervision
by the superintendent of streets. Section 4 establishes
permit fees of five dollars for each new pole and 25 cents
for each foot of gas main installed and imposes annual
license fees of one dollar per pole, 2½ cents per wire for
each street crossed, and 2½ cents per foot on all gas mains.
Section 4 requires annual statements as to the number and
location of poles and wires, the length of mains, and the
amount of license fees due the city. Section 6 establishes
the date for the payment of license fees. Section 7 pro-

vides penalties for the failure to file an annual statement or pay annual license fees. The 1919 ordinance is repealed by section 8, and section 9 is a saving clause.

Although defendants advanced a wide variety of constitutional arguments in their motions to strike, the trial court dismissed both actions upon the single ground that the ordinance involved an unconstitutional delegation of legislative authority to administrative officers. The city now concedes that the provisions of sections 2 and 3 authorizing the commissioner and the superintendent of streets to issue licenses and pass upon applications for permits are void for failure to establish adequate tests and standards. (*Dean Milk Co.* v. *City of Aurora,* 404 Ill. 331; *Lydy, Inc.* v. *City of Chicago,* 356 Ill. 230.) It is urged, however, that the saving clause makes the admittedly invalid portions of the ordinance severable and that the remaining part constitutes a complete and valid ordinance. In addition, most of the constitutional questions raised by the motions to strike are also argued upon this appeal.

In view of the circumstance that the license and permit fees sought to be exacted by the ordinance at hand and the fees imposed by the 1919 ordinance are substantially the same, except for the addition of fees on gas mains, the contention that the fees are excessive as a matter of law will be first considered. The sole basis for the imposition of the license fees in question is the city's undisputed authority to control the use of its streets and its ancillary power to require licenses and charge license fees in connection with the exercise of its specific regulatory powers. (Ill. Rev. Stat. 1949, chap. 24, pars. 23-10 to 23-21; *City of Chicago Heights* v. *Western Union Telegraph Co.* 406 Ill. 428.) Since the authority to require license fees constitutes an exercise of the police power, it follows that the license fees charged must bear some reasonable relation to the additional burdens and necessary expense involved in the regulation and supervision of the business affected,

otherwise the ordinance imposing the license fees will be regarded as a revenue measure and, being unauthorized, deemed null and void. *Ward Baking Co.* v. *City of Chicago,* 340 Ill. 212; *Nature's Rival Co.* v. *City of Chicago,* 324 Ill. 566; *Bauer* v. *City of Chicago,* 321 Ill. 259.

A municipal ordinance is presumed to be valid and, ordinarily, when challenged upon the theory that there is no reasonable relation between the license fee imposed and the cost of regulation, this contention must be both alleged and proved. A license fee may, however, be so grossly excessive as to be deemed arbitrary and unreasonable as a matter of law. (*City of Chicago Heights* v. *Western Union Telegraph Co.* 406 Ill. 428; *City of Peoria* v. *Postal Telegraph-Cable Co.* 274 Ill. 568.) In the first *Chicago Heights case,* we specifically held that the fees imposed by the 1919 ordinance were so grossly excessive as to be unreasonable as a matter of law. The city's contention that it was not the annual license fees but the accumulation of charges and penalties over a period of twenty years which were held excessive is without foundation. Our decision in the first *Chicago Heights case* is directly in point here.

Nevertheless, the city still contends that the fees imposed are not excessive as a matter of law. Of the six cases cited by the city, four, *Western Union Telegraph Co.* v. *Richmond,* 224 U.S. 160, *Postal Telegraph Cable Co.* v. *Baltimore,* 156 U.S. 210, *St. Louis* v. *Western Union Telegraph Co.* 148 U.S. 92, and *Memphis* v. *Postal Telegraph & Cable Co.* 164 Fed. 600, are inapplicable because they involve the question of the reasonableness of a charge in the nature of rent for the use of the streets rather than the reasonableness of a license fee purporting to be an approximation of the cost of regulation and supervision. The decision in the fifth case, *Atlantic and Pacific Telegraph Co.* v. *Philadelphia,* 190 U.S. 160, merely holds that, in a case tried before a jury, where the evidence does not exclude the conclusion that annual license fees of one dollar

per telegraph pole, $2.50 per mile of overhead wire and one dollar per mile of underground cable are unreasonable, the question of the reasonableness of the ordinance should not have been withdrawn from the jury. In the sixth case cited, *Western Union Telegraph Co.* v. *New Hope,* 187 U.S. 419, the Supreme Court of the United States held that a trial court's conclusion as to the reasonableness of an annual license fee of one dollar per pole and $2.50 per mile of wire was not so manifestly wrong as to require a reversal but, even there, four of the justices dissented. The authorities relied upon not being persuasive, we adhere to our decision in the first *Chicago Heights case* that the license and permit fees sought to be exacted are excessive and unreasonable as a matter of law.

While other provisions of the ordinance are also challenged, the next question requiring consideration is the severability of the portions of the ordinance already found to be unconstitutional. If the provisions relative to the issuance of licenses and permits and the imposition of fees therefor are not severable from the remainder of the ordinance, the entire enactment must fall and a determination of the constitutionality of the other disputed provisions will be unnecessary. It is settled that where the sections of a statute or ordinance are independent of each other the invalid sections may be disregarded and the valid sections permitted to stand, but where a portion of a statute or ordinance is valid and a portion invalid, and the court cannot say that the legislative body would have passed the enactment with the invalid portion eliminated, the entire statute or ordinance must be held invalid. (*People ex rel. City of Highland Park* v. *McKibbin,* 380 Ill. 447; *People ex rel. Yohnka* v. *Kennedy,* 367 Ill. 236.) Where the different objects of an act are dependent upon each other or are so mutually connected with each other that it cannot be presumed that the legislature would have enacted the provisions designed to achieve one of the objects with-

out the provisions for the other, the unconstitutionality of the latter renders the entire act invalid. (*People ex rel. Barrett* v. *Union Bank and Trust Co.* 362 Ill. 164; *Chicago Motor Club* v. *Kinney,* 329 Ill. 120.) Although a saving clause is included in section 9 of the ordinance, it is an aid merely—not an inexorable command. (*Carter* v. *Carter Coal Co.* 298 U.S. 238; *Dorchy* v. *Kansas,* 264 U.S. 286.) While this section constitutes some indication of legislative intention, it does not nullify any rule of statutory construction and must be applied in conformity with the rules of constitutional law. *Grennan* v. *Sheldon,* 401 Ill. 351; *Springfield Gas and Electric Co.* v. *City of Springfield,* 292 Ill. 236.

As adopted, the ordinance in question provides for a system of regulation, primarily by means of the issuance of licenses and permits, includes other regulatory features, and, lastly, establishes a schedule of fees to cover the necessary additional cost of regulation and supervision. The way the ordinance now stands, the provisions for the issuance of licenses and the approval of permits, manifestly the most important part of the regulatory system, are conceded to be unconstitutional and the other supervisory duties imposed upon the department of streets must be performed without reimbursement to the city because the license and permit fees provided for are excessive and void. Under the circumstances and, particularly, in view of the importance attached to the provisions for the payment of fees by the utilities affected, as revealed by the history of this litigation, it cannot be said that the city council would have adopted the ordinance with the several parts already determined to be invalid eliminated. Consequently, the entire ordinance is null and void.

The decrees of the superior court of Cook County are affirmed.

*Decrees affirmed.*