THE CATHOLIC BISHOP OF CHICAGO et al., Plaintiffs-Appellants, v. THE VILLAGE OF JUSTICE, Defendant-Appellee.

First District (5th Division)   No. 79-115

Opinion filed May 9, 1980.

Reuben & Proctor, Greenberger, Krauss & Jacobs, Chartered, and Raymond A. Rempert, all of Chicago (Don H. Reuben, James A. Serritella, James A. Klenk, John J. Durso, James T. Ryan, and Michael P. Boyd, of counsel), for appellants.

Schippers, O'Brien & Long, of Chicago (John W. Long, William R. Hogan, and Richard S. Jalovec, of counsel), for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

Plaintiffs brought an action seeking a declaratory judgment and an injunction enjoining defendant village of Justice from enforcing a village ordinance. On cross-motions for summary judgment, the trial court held that the fee provisions and territorial restriction provisions of the ordinance were invalid. The court enjoined enforcement of those provisions and left the balance of the ordinance standing. On appeal, plaintiffs contend that the ordinance is void in its entirety since it is not severable and it bears no reasonable relationship to the promotion of public welfare and that the trial court erred in denying its motion to supplement and reopen the record. We reverse the judgment of the trial court but affirm the denial of the motion. The relevant facts follow.

Prior to October of 1969, the village of Justice had enacted an ordinance that required cemeteries to pay an annual license fee of $200. On October 2, 1969, the village enacted Ordinance 69-24, which required funeral directors to pay a $10 permit fee to bury and disinter dead bodies in the village. In 1972 the Village Code was amended to require all cemeteries to obtain an annual license fee of $1500 for cemeteries under 20 acres and $2500 for cemeteries over 20 acres. None of the above-mentioned ordinances were ever enforced.

In February of 1976, the village enacted Ordinance 76-3,[1] which is the subject of this appeal. Upon the attempted enforcement of Ordinance 76-3, plaintiffs, various cemeteries and funeral directors located within the village of Justice, filed a first amended complaint on December 10, 1976, seeking to enjoin enforcement of the ordinance and a declaratory judgment alleging that the ordinance was: (1) an unlawful tax on tax-exempt property in violation of article 9, section 6, and article 7, section 7

---

[1] The complete text of the ordinance is appended to this opinion.

of the Illinois Constitution of 1970 and sections 19 and 19.3 of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, pars. 500, 500.3); (2) arbitrary and capricious and not reasonably related to any valid police power; (3) void for vagueness and violated due process because it lacked standards governing its administration; and (4) the provisions prohibiting the establishment or expansion of cemeteries constituted an unlawful taking of property without due process of law.

Thereafter, the parties stipulated, and the trial court ordered, that discovery depositions be taken and used as evidence, there being no other facts to be submitted. The depositions of various village officials were then taken and the evidence contained therein showed that the primary purpose for the enactment of Ordinance 76-3 was to obtain revenues from cemetery property located within the village. Specifically, trustee Travis Gravitt stated that the purpose of the ordinance was to require cemeteries to contribute money to the village in order to pay for general municipal services, *i.e.*, police and fire protection. Trustee James Heard stated that the ordinance acted as a vehicle for providing the village with additional revenue which would be put into the general fund. In addition, several of the depositions contained evidence which showed that none of the village officials had any idea as to the costs of administering the ordinance. Mayor Rusch and trustee Charles Hesek admitted that the fees were arbitrary figures. The only reference made to administrative costs were the costs of forms to be used and the registrar's salary, which was to be either all or part of the $5 fee collected for grave inspections.

On cross-motions for summary judgment, the trial court held that the burial and grave inspection fees (sections 7—5—5 and 7—5—12) bore no reasonable relationship to the cost of administering the ordinance and were in violation of article 9, section 6, and article 7, section 7 of the Illinois Constitution of 1970 and sections 19 and 19.3 of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, pars. 500, 500.3). The court also held that the provisions dealing with future cemetery expansion (sections 7—5—7, 7—5—9, 7—5—14, 7—5—16) lacked any articulated standards related to public health, safety, and welfare, and were therefore invalid under the doctrine of *City of Park Ridge v. American National Bank & Trust Co.* (1954), 4 Ill. 2d 144, 122 N.E.2d 265, which held absolute prohibitions of cemeteries invalid as violative of the due process clauses of the fourteenth amendment to the United States Constitution and article 1, section 2 of the Illinois Constitution of 1970. The grave inspection and record keeping provisions were upheld as valid exercises of the village's police power, pursuant to article 7, section 7 of the Illinois Constitution of 1970 and sections 11—20—5, 11—22—1, 11—49—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1977, ch. 24, pars. 11—20—5, 11—22—1,

11—49—1). Lastly, the court stated that the provisions of Ordinance 76-3 were severable and that the village has the right under the Constitution and statutes to regulate the circumstances and conditions of burials.

Following the court's final ruling, plaintiffs filed a motion to supplement and reopen the record for the purpose of adding evidence demonstrating past course of dealings between the village officials and plaintiff, Resurrection Cemetery. The motion was denied, however, based on the prior stipulation entered into by the parties. Plaintiffs now appeal that motion and that part of the court's judgment holding the ordinance severable and certain provisions valid.

OPINION

As a threshold matter, plaintiffs contend that Ordinance 76-3 is void in its entirety since the provisions declared invalid are not severable from the remainder of the ordinance. They argue, and correctly so, that the provisions are not independent of each other and therefore the village officials would not have adopted the ordinance without the provisions already determined to be invalid.

Plaintiffs find dispositive of this issue the case of *City of Chicago Heights v. Public Service Co.* (1951), 408 Ill. 604, 97 N.E.2d 807, which is the third and last in a series of cases involving the city's attempt to obtain revenue from various public utilities. In the first case, *City of Chicago Heights v. Western Union Telegraph Co.* (1950), 406 Ill. 428, 94 N.E.2d 306, the city sought to enforce a 1919 ordinance which contained a license fee scheme. The supreme court held that the ordinance was unconstitutional in that it contained no regulatory provisions and therefore amounted to a revenue measure, and that the fees imposed were excessive and unreasonable as a matter of law. In the second case, *City of Chicago Heights v. Public Service Co.* (1951), 408 Ill. 310, 97 N.E.2d 268, the supreme court found that the ordinance which the city sought to enforce was primarily a privilege tax based upon gross revenues of the taxpayer utility, and it too was struck down as unconstitutional.

Finally, in the *Chicago Heights* case relied upon by plaintiffs here, the city amended the 1919 ordinance involved in the original case by adding certain regulatory provisions to the fee structure. The ordinance also contained certain provisions granting the commissioner and city superintendent of streets unlimited discretionary authority to issue the licenses and permits. The supreme court held that the regulatory provisions were merely added in an effort to validate the fee structure, and therefore the court followed its decision in the original *Chicago Heights* case. Moreover, the court held that the provisions granting the commissioner and superintendent of streets discretionary authority to

issue licenses and permits were void for failure to establish adequate tests and standards.

In addressing the issue of the severability of the provisions of the ordinance already found to be unconstitutional, the court stated:

"It is settled that where the sections of a statute or ordinance are independent of each other the invalid sections may be disregarded and the valid sections permitted to stand, but where a portion of a statute or ordinance is valid and a portion invalid, and the court cannot say that the legislative body would have passed the enactment with the invalid portion eliminated, the entire statute or ordinance must be held invalid. (*People ex rel. City of Highland Park v. McKibbin*, 380 Ill. 447; *People ex rel. Yohnka v. Kennedy*, 367 Ill. 236.) Where the different objects of an act are dependent upon each other or are so mutually connected with each other that it cannot be presumed that the legislature would have enacted the provisions designed to achieve one of the objects without the provisions for the other, the unconstitutionality of the latter renders the entire act invalid. (*People ex rel. Barrett v. Union Bank and Trust Co.* 362 Ill. 164; *Chicago Motor Club v. Kinney*, 329 Ill. 120.)" (*City of Chicago Heights v. Public Service Co.* (1951), 408 Ill. 604, 610-11, 97 N.E.2d 807, 811.)

The court further stated:

"Under the circumstances and, particularly, in view of the importance attached to the provisions for the payment of fees by the utilities affected, as revealed by the history of this litigation, it cannot be said that the city council would have adopted the ordinance with the several parts already determined to be invalid eliminated." *City of Chicago Heights v. Public Service Co.* (1951), 408 Ill. 604, 611, 97 N.E.2d 807, 811.

■■ We believe the rationale of the court in *Chicago Heights* to be applicable to the facts presented in the case at bar, particularly in light of the village's repeated attempts to obtain revenue from the tax-exempt cemetery property located within its boundaries. Here, as in *Chicago Heights*, it cannot be said that the village officials would have adopted Ordinance 76-3 with the invalid provisions eliminated. Accordingly, we hold that the invalid provisions are not severable from the remainder of the ordinance and therefore the entire ordinance must be held invalid.

Having determined that the ordinance is void in its entirety, we need not address the remaining arguments that challenge the constitutionality of the ordinance.

We will, however, consider the question of whether the trial court erred in denying plaintiffs' motion to reopen and supplement the record.

Plaintiffs argue that additional evidence on the course of dealings between the village and Resurrection Cemetery should have been allowed in order to show the various means by which the village has harassed and discriminated against the cemeteries within its boundaries. In response, defendant argues that the trial court correctly refused the motion based on the prior stipulation entered into by the parties that the depositions would be treated as evidence, there being no other facts to be submitted. We agree.

■■ ■ It is well settled in Illinos that stipulations between parties are enforced by the courts unless there is a showing that the stipulation is a result of fraud or is contrary to the public morals. (*Department of Business & Economic Development v. Pioneer Trust & Savings Bank* (1973), 15 Ill. App. 3d 269, 304 N.E.2d 57; *Kazubowski v. Kazubowski* (1968), 93 Ill. App. 2d 126, 235 N.E.2d 664.) Once a case has been closed the decision as to whether a party may reopen the proceeding to introduce further testimony is within the sound discretion of the trial court, and that decision will not be disturbed on review unless it appears that discretion was clearly abused and that failure to reopen proofs resulted in substantial injustice. *Exchange National Bank v. Heller* (1975), 26 Ill. App. 3d 675, 325 N.E.2d 328.

Upon an examination of the facts here, we find no evidence in the record that the stipulation entered into by the parties is a result of fraud or is contrary to public policy. Nor can we say that the trial court abused its discretion in refusing to reopen the record. We hold, therefore, that the trial court correctly denied plaintiffs' motion.

For the reasons stated, we reverse the judgment of the trial court and affirm the denial of the motion to reopen the record.

Reversed in part and affirmed in part.

SULLIVAN, P. J., and LORENZ, J., concur.

APPENDIX

"ORDINANCE NO. 76-3
AN ORDINANCE AMENDING VILLAGE OF
JUSTICE CODE, CHAPTER 5 "BURIAL PERMITS" SEC-
TION 7—5—1 THROUGH 7—5—7 AND
ADDING SECTION 7—5—8 THROUGH AND IN-
CLUDING 7—5—17.

* * *

## Section 1

BE IT ORDAINED, by the President and Board of Trustees of the Village of Justice that Chapter 5, Section 7—5—1 through Section 7—5—17 is hereby amended to read as follows:

7—5—1: BURIALS AND REMOVALS: Hereafter it shall be unlawful for any person to move the dead body of any human being, or any part of such body, from any hospital or from place to place within the Village, or from the Village, or to cremate or deposit any human body in any vault within the Village, or to inter or disinter, or in any manner dispose of, any dead human body or part thereof without first obtaining a permit to do so from the Village Registrar or his duly authorized representative; nor shall any dead human body or part thereof be disposed of otherwise than in accordance with the terms of the said permit. Permits for the removal, interment, cremation or disposal of dead bodies shall be issued only upon the presentation of a proper death certificate to the Village Registrar or his duly authorized representative. Said death certificate shall be signed by a duly licensed physician who had attended the deceased during his last illness or by the Coroner of Cook County, Illinois, or, if the death occurred outside of Cook County, Illinois, the permit of the proper authority at the place where death occurred. Any permit issued in accordance with the provisions of this Section may be recalled by the Village Registrar at any time after the issuance thereof, whenever he shall have evidence that such permit was issued on improper or insufficient information contained in the death certificate, or when it is found that the conditions of the permit are not complied with, and any undertaker or other person holding such permit shall, upon notification of its recall, forthwith surrender such permit to said Village Registrar.

7—5—2: PERMIT FOR BURIAL: No permit for burial of any dead human body shall be issued to any one except an undertaker who has been licensed as provided by statute.

7—5—3: CEMETERY SUPERINTENDENTS TO REPORT: No Superintendent or other person in charge of any cemetery or other place for the disposition of dead bodies shall assist in, assent to or allow any such interment, disinterment, cremation or disposition to be made in any such cemetery or place, of any dead human body or part thereof until a permit shall have been issued as hereinbefore provided. It shall be the duty of every such superintendent or person in charge of a cemetery or such other place where dead bodies are disposed of who shall receive any such permit to fill out

the coupon attached thereto, sign, date and return the same to the Department of Health within forty-eight (48) hours after the receipt by him of such permit.

7—5—4: ISSUANCE OF PERMIT: Each permit shall be issued by the Village Registrar upon presentation of a death certificate signed by the attending physician, Coroner or other officer authorized by Statute to execute a death certificate.

7—5—5: FEE FOR PERMIT: The fee for issuance of such permit shall be ten dollars ($10.00) for each burial or cremation made within the corporate limits of the Village.

7—5—6: REPORTS: Every person that is conducting, operating, managing or carrying on a cemetery business or crematory within the Village limits shall file with the Village Registrar at the end of every quarter of each year a report which shall show the number of bodies buried in said cemetery or cremated in said crematory during said period, and which burial permits have been issued by the Village Registrar. The said report shall give the official name of said cemetery and the location thereof and shall have attached to it an affidavit by the owner, officer or other person in charge of said cemetery, certifying that said report is correct. The Village Registrar shall cause said report to be checked with the burial permits issued by said Registrar and, if correct, shall notify the Village Clerk of the number of bodies so buried or cremated by the person making such report.

7—5—7: ESTABLISHMENT: That the further establishment of cemeteries, either within the corporate limits of Village of Justice or within one (1) mile thereof, shall be and the same is hereby prohibited.

7—5—8: BOUNDARIES FIXED: The boundaries of all cemeteries within the limits of said Village are hereby fixed at the enclosures now surrounding any such cemeteries.

7—5—9: EXTENSIONS TO BE APPROVED: No corporation, person or persons shall enlarge the boundaries of any cemetery within the limits of the Village as the same are now recorded, unless the Village Board shall first fix and determine the boundaries of any cemetery so to be enlarged.

7—5—10: BURIAL OUTSIDE ENCLOSURES PROHIBITED: No corpse shall be interred in any place within the Village of Justice not actually used as a cemetery, or within the enclosure of a cemetery, except as hereinafter provided.

7—5—11: BURIALS MUST CONFORM TO RULES: It shall be lawful to inter dead bodies within the limits of any cemetery established and used as a cemetery under such rules and

regulations as may from time to time be made by the Village Board, but the burial of any corpse outside of such limits and within said Village shall be deemed a violation of this chapter.

7—5—12: CEMETERY INSPECTOR: The Local Registrar of the Village of Justice shall act as Cemetery Inspector. He shall report monthly to the President and Board of Trustees as to inspections made and the amount of inspection fees charged against the owners and operators of cemeteries legally within the limits of the Village. The amount of fee for each and every inspection made by said inspector shall be five dollars ($5.00) for each grave inspected, same to be paid by the cemetery where said grave is located, and it shall be the duty of such cemetery inspector to see that the legal requirements of the Department of Health of the State of Illinois are complied with by the cemetery and that any and all Village laws in relation thereto are enforced. No inspection fee, or charge of any sort, shall be made for burials for which no fee is charged by the cemetery, to-wit; charitable, military, pauper or child burials.

7—5—13: OWNERS TO FURNISH PLATS: When ordered by President and Village Board of Trustees, the owners or owner of any cemetery lying within the Village limits shall furnish for the use of the Village, and without cost, a map or plat of said cemetery giving the correct legal description of same.

7—5—14: PERMISSION FOR EXTENSION: Hereinafter no permission shall be granted to extend the boundaries of any cemetery within the Village without the payment of a just and adequate compensation for the loss of taxable property occasioned by such extension: the amount of compensation to be fixed by the Village Board.

7—5—15: DISPOSITION OF INSPECTION FEES: All sums of money paid for the inspection of graves, as herein-foresaid shall be paid into and become a part of the general funds of the said Village of Justice.

7—5—16: INTERPRETATION: Nothing herein contained shall be so construed as to compel the Village Board to grant any permission to extend or enlarge any cemetery or change the boundaries of any now existing; but the Village Board may at any time refuse such permission.

7—5—17: DISINTERMENT OF DEAD BODIES FINE: It shall be lawful for the court to order the offender to disinter any and all dead bodies that he may prove to have been buried contrary to the provisions of this Chapter; and any person who shall fail or refuse to remove such dead body shall be fined ten dollars ($10.00) for each day the same shall remain unmoved after such order of court.

It shall be lawful for any person under the direction of the Village Board, to disinter any corpse buried contrary to the provisions of this Chapter and to remove and reinter the same within the lawful bounds of any cemetery.

## Section 2

All ordinances, or parts of ordinances, in conflict herewith are hereby repealed."